1  EMILY F. EVITT (SBN 261491)
      efe@msk.com
2  ROBERT H. ROTSTEIN (SBN 72452)
      rxr@msk.com
3  MITCHELL SILBERBERG & KNUPP LLP
   2049 Century Park East, 18th Floor
4  Los Angeles, CA  90067-3120
   Telephone: (310) 312-2000
5  Facsimile: (310) 312-3100

6  *Attorneys for Defendants Adam McKay,*
   *Netflix, Inc., David Sirota, and Hyperobject*
7  *Productions*

8

9                    UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11  WILLIAM COLLIER, an Individual,        CASE NO. 2:23-cv-10227-SPG-DFM

12              Plaintiff,                 Hon. Sherilyn Peace Garnett

13        v.                              **NOTICE OF MOTION AND**
                                          **MOTION OF DEFENDANTS ADAM**
14  ADAM MCKAY, an Individual;            **MCKAY, NETFLIX, INC., DAVID**
    NETFLIX, INC. a Delaware              **SIROTA, AND HYPEROBJECT**
15  corporation, DAVID SIROTA, an         **PRODUCTIONS TO DISMISS**
    Individual; HYPEROBJECT               **PLAINTIFF'S FIRST AMENDED**
16  PRODUCTIONS, a Delaware limited       **COMPLAINT, IN ITS ENTIRETY,**
    liability company; and DOES 1-50,     **PURSUANT TO FEDERAL RULE**
17  inclusive,                            **OF CIVIL PROCEDURE 12(b)(6);**
                                          **MEMORANDUM OF POINTS AND**
18              Defendants.               **AUTHORITIES IN SUPPORT**
                                          **THEREOF**
19

20                                        Time:        1:30 p.m.
                                          Date:        July 17, 2024
21                                        Courtroom:   5C

22                                        Filing Date: Dec. 6, 2023
                                          Trial Date:  TBD
23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

─────────────────────────────────────────────
**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on Wednesday, July 17, 2024, at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Sherilyn Peace Garnett in Courtroom 5C, located at 350 West 1st Street, Los Angeles, CA 90012, Defendants Adam McKay, Netflix, Inc., David Sirota, and Hyperobject Productions (collectively, "Defendants") will and hereby do move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an Order dismissing Plaintiff William Collier's First Amended Complaint (ECF 26) in its entirety, without leave to amend.

All Defendants move to dismiss the First Cause of Action for Copyright Infringement on the grounds that it fails to and cannot state a claim for relief under Rule 12(b)(6).

McKay moves to dismiss the Second Cause of Action for Breach of Implied-in-fact Agreement on the grounds that it fails to and cannot state a claim for relief under Rule 12(b)(6).

This Motion is based upon this Notice of Motion and Memorandum of Points and Authorities; the concurrently filed Request for Judicial Notice and Declaration of Emily F. Evitt in support thereof; all pleadings and other records on file in this action; any other matters that may be judicially noticed; and such further evidence and arguments as may be presented at or before the hearing on this Motion.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on April 15, 2024, during which the parties thoroughly discussed the substance and potential resolution of the Motion by videoconference. The parties were unable to reach a resolution that eliminated the necessity for Defendants to bring their Motion.

Mitchell
Silberberg &
Knupp LLP

**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1    Dated: May 13, 2024                          EMILY F. EVITT
                                                  ROBERT H. ROTSTEIN
2                                                 MITCHELL SILBERBERG & KNUPP LLP

3

4                                                 By:        /s/Emily F. Evitt
5                                                          Emily F. Evitt
                                                          *Attorneys for Defendants Adam McKay,*
6                                                         *Netflix, Inc., David Sirota, and*
                                                          *Hyperobject Productions*
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

# **TABLE OF CONTENTS**

**Page(s)**

I.     INTRODUCTION ...................................................................................1

II.    FACTUAL ALLEGATIONS ..................................................................2

    A.    *The Works at Issue* ....................................................................2

        1.    Defendants and *Don't Look Up*. ...................................2

        2.    Collier's *Stanley's Comet*. ............................................4

III.   GOVERNING LEGAL STANDARDS ....................................................6

IV.    COLLIER CANNOT STATE A CLAIM FOR COPYRIGHT
       INFRINGEMENT ...................................................................................7

V.     THE CLAIM FOR BREACH OF IMPLIED-IN-FACT AGREEMENT
       FAILS ...................................................................................................16

VI.    COLLIER'S CLAIM FOR BREACH OF IMPLIED-IN-FACT
       AGREEMENT IS BARRED BY THE STATUTE OF LIMITATIONS .....21

VII.   CONCLUSION .....................................................................................22

Mitchell
Silberberg &
Knupp LLP

**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A Slice of Pie Prods., LLC v. Wayans Bros. Entm't*,
    487 F. Supp. 2d 41 (D. Conn. 2007) ................................................................. 18

*Apple Computer, Inc. v. Microsoft Corp.*,
    35 F.3d 1435 (9th Cir. 1994) .......................................................................... 8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................... 6

*Benay v. Warner Bros. Entm't, Inc.*,
    607 F.3d 620 (9th Cir. 2010) ............................................................. 7, 17, 21

*Berkic v. Crichton*,
    761 F.2d 1289 (9th Cir. 1985) ................................................................... 8, 9

*Bissoon-Dath v. Sony Computer Entm't Am., Inc.*,
    694 F. Supp. 2d 1071 (N.D. Cal. 2010) ...................................................... 7, 8

*Brown v. Electronic Arts, Inc.*,
    724 F. 3d 1235 (9th Cir. 2013) ..................................................................... 7

*Carlini v. Paramount Corp.*,
    2022 WL 614044 (9th Cir. Mar. 2, 2022) ..................................................... 7

*Cavalier v. Random House, Inc.*,
    297 F.3d 815 (9th Cir. 2002) ........................................................................ 8

*Funky Films, Inc. v. Time Warner Entm't, Inc.*,
    462 F.3d 1072 (9th Cir. 2006) ................................................................... 8, 9

*Goldberg v. Cameron*,
    482 F. Supp. 2d 1136 (N.D. Cal. 2007) ....................................................... 21

*Hanagami v. Epic Games, Inc.*,
    85 F.4th 931 (9th Cir. 2023) ......................................................................... 6

*Henried v. Four Star Television*,
    266 Cal. App. 2d 435 (1968) ................................................................. 17, 18

*Idema v. Dreamworks, Inc.*,
    162 F. Supp. 2d 1129 (C.D. Cal 2001) ........................................................ 12

Mitchell
Silberberg &
Knupp LLP

5

*Klekas v. EMI Films, Inc.*,
    150 Cal. App. 3d 1102 (1984) ............................................................ 17, 18, 19

*Kouf v. Walt Disney Pictures & Television*,
    16 F.3d 1042 (9th Cir. 1994) ............................................................................ 8

*Litchfield v. Spielberg*,
    736 F.2d 1352 (9th Cir. 1984) .......................................................................... 9

*Marcus v. ABC Signature Studios, Inc.*,
    279 F. Supp. 3d 1056 (C.D. Cal. 2017) ............................................................ 6

*Masterson v. Walt Disney Co.*,
    821 F. App'x 779 (9th Cir. Aug. 3, 2020) ........................................................ 6

*Milano v. NBC Universal, Inc.*,
    584 F. Supp. 2d 1288 (C.D. Cal. 2008) .......................................................... 13

*Narell v. Freeman*,
    872 F.2d 907 (9th Cir. 1989) ............................................................................ 9

*Norman v. Ross*,
    2024 WL 1731781 (Cal. Ct. App. Apr. 23, 2024) ............................ 17, 18, 19, 20

*Olson v. Nat'l Broad. Co.*,
    855 F.2d 1446 (9th Cir. 1988) ........................................................................ 12

*Rice v. Fox Broad. Co.*,
    330 F.3d 1170 (9th Cir. 2003) .......................................................................... 8

*Ryder v. Lightstorm Ent., Inc.*,
    246 Cal. App. 4th 1064 (2016) .................................................................. 16, 17

*Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*,
    952 F.3d 1051 (9th Cir. 2020) ........................................................ 6, 7, 8, 15

*Spinner v. Am. Broad. Cos.*,
    215 Cal. App. 4th 172 (2013) ........................................................................ 16

*Sutton v. Walt Disney Prods.*,
    118 Cal. App. 2d 598 (1953) .......................................................................... 18

*Swirsky v. Carey*,
    376 F.3d 841 (9th Cir. 2004) ............................................................................ 8

Mitchell
Silberberg &
Knupp LLP

**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

*Washington v. ViacomCBS Inc.*,
  2023 WL 2658749 (9th Cir. Mar. 28, 2023) .......................................................7

*Weitzenkorn v. Lesser*,
  40 Cal. 2d 778 (1953) .......................................................................................17

*Yonay v. Paramount Pictures Corp.*,
  ECF 105, CV 22-3846 PA (GJSX) (C.D. Cal. Apr. 5, 2024) ...........................11

*Zella v. The E.W. Scripps Co.*,
  529 F. Supp. 2d 1124 (C.D. Cal. 2007) ...........................................................7, 8

## STATUTES & RULES

Cal. Code Civ. Proc. § 339(1) ................................................................................21

Fed. R. Civ. P. 12(b)(6) .....................................................................................2, 6

## OTHER AUTHORITIES

Adam McKay, WIKIPEDIA, https://en.wikipedia.org/wiki/Adam_McKay
  (last visited Apr. 18, 2024) .................................................................................2

Christy Pina, *"Don't Look Up" Team on the Urgency of Addressing Climate Crisis: "We're Literally Living in the Movie,"* Hollywood Reporter, Dec. 6, 2021, https://www.hollywoodreporter.com/movies/movie-news/dont-look-up-premiere-adam-mckay-leonardo-dicaprio-1235057574/........................2

Mitchell
Silberberg &
Knupp LLP

**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

# **MEMORANDUM**

## I.    INTRODUCTION

In this action for copyright infringement and state-law breach of an implied-in-fact agreement, Plaintiff William Collier claims ownership of the uncopyrightable concept of a comet colliding with Earth.  All alleged similarities between the works at issue flow from that broad, generic premise.  In fact, Collier's self-published novel, *Stanley's Comet* (the "Novel") and Defendants' acclaimed motion picture *Don't Look Up* (the "Film") differ in both idea and expression, dooming both of his claims as a matter of law:

- Plaintiff's copyright infringement count fails because the works are not substantially similar in ***expression***.  Applying the Ninth Circuit's well-settled "extrinsic" test, the works differ in plot, theme, characters, setting, sequence of events, mood, and pace, and thus lack "substantial similarity" of copyrightable expression.  One telling example: in the Film, the comet destroys Earth, killing almost all of humankind; in the Novel, the comet misses Earth and humankind survives.

- As to the implied-in-fact agreement count, because the works differ in plot, sequence of events, characters, setting, dramatic gimmicks, and themes, Plaintiff cannot establish that Defendants ***used*** his idea.  And, Plaintiff filed this action outside the applicable two-year statute of limitations.

Any attempt at amendment would be futile.  The First Amended Complaint ("FAC") should be dismissed with prejudice.

Mitchell
Silberberg &
Knupp LLP

1

## II.    FACTUAL ALLEGATIONS[1]

### A.    *The Works at Issue*

#### 1.    Defendants and *Don't Look Up*.

Adam McKay – writer and director of popular films such as *Stepbrothers*, *Anchorman*, and *The Big Short* – wrote the Film.[2]  FAC ¶22.  McKay and Defendant David Sirota received "story by" credits.  *Id.* ¶23.  Hyperobject, McKay's production company, produced the Film.  *Id.* ¶25.  On December 5, 2021, the Film premiered in New York City.[3]  On December 24, 2021, the Film began streaming on Netflix.  FAC ¶20.

A satire of disaster movies, the Film centers around two astronomers attempting to warn humanity about an approaching comet that will destroy human civilization.  Film, RJN, Ex. A.  The impact event is an allegory for cataclysmic events like climate change, and the Film satirizes government, politics, celebrity, conspiracy theories, and media indifference.

Kate Dibiasky, a doctoral candidate in astronomy, discovers the comet.  Dr. Randall Mindy confirms that the comet will collide with Earth in approximately six months and fourteen days, and will cause global extinction.  Film, RJN, Ex. A (~07:28-07:59).  However, President Janie Orlean and her Chief of Staff Jason Orlean (also her son) are apathetic, so Dibiasky and Mindy leak the news to the media.  *Id.* (~18:03-24:43; 27:38-29:30).  After both astronomers appear on a

---

[1] Appropriately on a motion to dismiss under Rule 12(b)(6), the summary of factual allegations comes from the face of the FAC, material incorporated by reference therein (including the Novel and Film), and other material that may be judicially noticed.  As set forth in the contemporaneously filed Request for Judicial Notice ("RJN"), the Court may consider these materials at this stage.

[2] Adam McKay, WIKIPEDIA, https://en.wikipedia.org/wiki/Adam_McKay (last visited Apr. 18, 2024).  McKay also co-founded the website "Funny or Die" and served as head writer on the television show *Saturday Night Live*.  *Id.*

[3] *See* Christy Pina, *"Don't Look Up" Team on the Urgency of Addressing Climate Crisis: "We're Literally Living in the Movie,"* Hollywood Reporter, Dec. 6, 2021, https://www.hollywoodreporter.com/movies/movie-news/dont-look-up-premiere-adam-mckay-leonardo-dicaprio-1235057574/ (covering the red carpet premiere of the Film on December 5, 2021).

1  popular morning talk show hosted by Brie Evantee, viewers show more interest in

2  Mindy's good looks and Dibiasky's on-air meltdown than in the impending

3  cataclysm. *Id.* (~36:53-41:29; 41:55-43:10).

4        When news of a sex scandal involving President Orlean becomes public, she

5  distracts from the bad publicity by finally confirming the comet's threat and

6  announcing a U.S. mission to divert it using nuclear weapons. She reverses course,

7  however, when a billionaire CEO discovers that the comet contains trillions of

8  dollars' worth of rare-earth elements. *Id.* (~45:45-46:20; 49:30-49:48; 50:48-

9  54:03; 1:08:00-1:10:28; 1:12:04-1:13:57). Mindy becomes an advocate for the

10  comet's commercial opportunities, while Dibiasky opposes that position. Mindy

11  has an affair with Evantee, the talk show host. *Id.* (~1:14:12-1:16:52; 1:18:08-

12  1:21:35). The world is divided between people who think the comet is a threat and

13  those who deny the comet's existence. *Id.* (~1:17:41-1:18:05; 1:21:35-1:21:49).

14        Once the comet becomes visible from Earth, Mindy and Dibiasky reconcile

15  and organize a protest campaign urging people to "Just Look Up." President

16  Orlean starts a counter-campaign: "Don't Look Up." *Id.* (~1:35:39-1:45:09;

17  1:47:14-1:48:04). In the finale, President Orlean and other elites board a spaceship

18  to save themselves and invite Mindy to join them. After reconciling with his wife,

19  he instead spends his final evening with friends and family. The comet strikes,

20  triggering a global extinction-level event, and Mindy perishes surrounded by loved

21  ones. *Id.* (~1:59:30-2:06:25).

22        During the movie's end credits, a bonus scene shows the 2,000 people who

23  escaped the comet landing on an alien planet 22,740 years later. After they exit

24  their spaceship and admire the new planet's beauty, a bird-like predator kills

25  President Orlean. *Id.* (~2:08:13-2:10:12). A post-credits scene back on Earth

26  reveals that the President's son and chief-of-staff, Jason, managed to survive the

27  impact. He records himself, declaring himself the "last man on Earth" and asking

28  any viewers to "like and subscribe." *Id.* (~2:17:12-2:17:56).

Thematically, the Film uses the idea of the impending comet collision to draw analogies to the world's existential crises – *e.g.*, climate change – and to critique the failure of institutions to respond to those crises, including through portraying unqualified government officials who obtain their positions through financial influence and cultivate political divisions; private-tech interests that sway the government; and cable news networks that warp the public discourse.

### 2. Collier's *Stanley's Comet*.

In 2012, Collier self-published *In Extremis: Two Novels by W.H. Collier*,[4] which consists of the novels *Stanley's Comet* and *The Third Love*.[5] FAC ¶19. *Stanley's Comet* counts down the seven days before a comet will supposedly hit Earth. Novel, RJN, Ex. B. The story largely centers on Stanley Caldwell, an unremarkable 34-year-old man who works as an assistant manager at a self-described "dead-end job" at a copy shop, and who lives in Baton Rouge, Louisiana, with his mother, who suffers from memory loss and with whom Stanley Caldwell has a close relationship. *Id.*

At the Novel's beginning, Stanley Caldwell is watching a television news program featuring guest Dr. Herschel Stanley ("Dr. Stanley"), who announces that a comet will strike Earth. *Id.* (3-6). Dr. Stanley is described as unattractive, with "oily" black hair and thick, black, horn-rimmed glasses. *Id.* (30). Later, at work, Stanley Caldwell watches a press conference, in which the U.S. President – a handsome, chiseled, short, barrel-chested, robust man – is bombarded with questions about the comet as he tries to announce a new vitamin supplement benefit package the White House is rolling out. The President acknowledges the comet, but claims it will not collide with Earth. *Id.* (14-16).

---

[4] Although Collier allegedly published the Novel in 2012, he alleges he completed it in 2004. *See* FAC ¶¶5, 19.

[5] *The Third Love* is not at issue. *See generally* FAC.

People in Stanley Caldwell's life take disparate positions on whether the comet poses a threat. His boss believes the report is fake news. His neighbor thinks an alien invasion force is the real threat. His much-younger work crush is indifferent. *Id.* (16-17, 19-20, 24).

As the comet nears, the President announces a multi-national launching of nuclear missiles to destroy the comet. Dr. Stanley scoffs at this tactic. The nuclear launch is abandoned due to lack of international support. *Id.* (27-31, 36).

The comet is called "Stanley's Comet," after Dr. Stanley's surname. At the same time, the comet's name ties in the Novel's main character, Stanley Caldwell. Novel, RJN, Ex. B. Dr. Stanley persistently uses the term "my comet" and signs autographs with a small scribbling of a comet. *Id.* (32, 34). He has a morbidly positive attitude about the imminent destruction: at a millionaire filmmaker's party, he tells the filmmaker's wife, Cinnamon, that the comet is "glorious retribution" because everyone who was ever mean to him will perish, and when that happens they will have to think of him. Cinnamon offers to have sex with Dr. Stanley, who claims to be a virgin. Dr. Stanley has taken drugs and falls asleep before any intimacy occurs. *Id.* (48-50).

The President commits suicide, leaving on his carpet a bloodstain in the shape of a comet. *Id.* (37-38). People fight in the streets and loot houses and stores. Food and gasoline are unavailable. An angry mob sees Dr. Stanley and tries to hang him. *Id.* (66-70, 74-75). A NASA scientist announces a new project to create, for posterity, a final record of Earth. The project falls apart at the last minute, and the scientist ends up cobbling together random musings about Earth. *Id.* (59-64, 90-93).

Meanwhile, as Stanley Caldwell searches for his missing mother, he encounters a child looking for his own mother. They see the comet approaching. A bright light overtakes the sky, and Stanley Caldwell says "Mama." *Id.* (100-02). The epilogue reveals that the comet did ***not*** hit Earth and that everyone survived.

Mitchell Silberberg & Knupp LLP

5

Stanley Caldwell finds his mother.  Dr. Stanley appears on a news program, denies he was "wrong" about the comet, and warns that the same comet will collide with Earth in 100 million years.  *Id.* (103-110).

Collier claims that, in 2007, he sent a copy of the Novel to his daughter, who at the time allegedly worked at Jimmy Miller Entertainment ("JME").  FAC ¶¶7-18.  Collier **speculates,** based on alleged "custom and practice in the entertainment industry," that JME president Jimmy Miller, who was McKay's manager at the time, must have received and read the Novel.  FAC ¶¶15-17.[6]

## III.    GOVERNING LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  The court need not accept as true a "legal conclusion couched as a factual allegation."  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While "it is generally disfavored for copyright claims to be dismissed for lack of substantial similarity at the pleading stage," *Hanagami v. Epic Games, Inc.*, 85 F.4th 931, 945 (9th Cir. 2023), dismissal is appropriate where "nothing disclosed during discovery could change the court's conclusion that the works are not substantially similar" or where the "works are so dissimilar by plain sight that any person observing them could confidently conclude that they do not share substantial similarities."  *Id.* (citing *Rentmeester v. Nike*, 883 F.3d 1111, 1123 (9th Cir. 2018)), *overruled on other grounds by Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020).

Dismissal is appropriate where the two works at issue "are both before the court" and "capable of examination and comparison."  *Marcus v. ABC Signature Studios, Inc.*, 279 F. Supp. 3d 1056, 1064 (C.D. Cal. 2017); *see Masterson v. Walt*

---

[6] Notably, Collier does not allege that his daughter worked for McKay's manager, or indeed ever even met McKay.

**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Mitchell
Silberberg &
Knupp LLP

*Disney Co.*, 821 F. App'x 779, 781 (9th Cir. Aug. 3, 2020) (substantial similarity does not necessarily require expert testimony; grant of motion to dismiss proper where "not plausible that the Book and the Movie have any substantial similarity"); *Washington v. ViacomCBS Inc.*, 2023 WL 2658749 at *1 (9th Cir. Mar. 28, 2023) (affirming dismissal for lack of substantial similarity without leave to amend "because the complaint's deficiencies could not be cured by amendment"); *Carlini v. Paramount Corp.*, 2022 WL 614044 (9th Cir. Mar. 2, 2022) (affirming dismissal of infringement case where a review of the works revealed no substantial similarity as a matter of law). When considering a motion to dismiss, a court may take judicial notice of "documents [such as copies of works] which are not physically attached to the complaint but 'whose contents are alleged in [the] complaint and whose authenticity no party questions.'" *Zella v. The E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1128 (C.D. Cal. 2007); *see Brown v. Electronic Arts, Inc.*, 724 F. 3d 1235, 1248 n.7 (9th Cir. 2013) (applying "incorporation by reference doctrine").

## IV. COLLIER CANNOT STATE A CLAIM FOR COPYRIGHT INFRINGEMENT.

To establish copyright infringement, a plaintiff must prove (1) ownership of a copyright in a work, and (2) copying by a defendant of original elements of the work. *Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 624 (9th Cir. 2010), *overruled on other grounds by Skidmore*. "A plaintiff can establish copying either (1) by presenting direct evidence of copying or (2) by showing that the defendant had access to the work and that the works at issue are substantially similar." *Bissoon-Dath v. Sony Computer Entm't Am., Inc.*, 694 F. Supp. 2d 1071, 1078 (N.D. Cal. 2010), *aff'd and adopted by*, 653 F.3d 898 (9th Cir. 2011).

Defendants dispute Collier's specious and speculative access theory, but do not move to dismiss on that ground. Even where a defendant assumes access when bringing a dispositive motion, a plaintiff's claim fails where the works are not

1  substantially similar. *Bissoon-Dath*, 694 F. Supp. 2d at 1079; *see also Funky*

2  *Films, Inc. v. Time Warner Entm't, Inc.*, 462 F.3d 1072, 1081 (9th Cir. 2006),

3  *overruled on other grounds by Skidmore* ("No amount of proof of access will

4  suffice to show copying if there are no similarities.") (citation omitted).

5     To prove two works are substantially similar in protected expression, a

6  plaintiff must satisfy both an "extrinsic" test and an "intrinsic" test. *Funky Films*,

7  462 F.3d at 1077. On a motion to dismiss, only the extrinsic test is relevant. *See*

8  *Zella*, 529 F. Supp. 2d at 1133. This test "objectively considers whether there are

9  substantial similarities in *both* ideas and expression." *Apple Computer, Inc. v.*

10 *Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994) (emphasis in original).[7]

11    The extrinsic test "focuses on articulable similarities between the plot,

12 themes, dialogue, mood, setting, pace, characters, and sequence of events." *Rice v.*

13 *Fox Broad. Co.*, 330 F.3d 1170, 1174 (9th Cir. 2003), *overruled on other grounds*

14 *by Skidmore*. Moreover, "[c]opyright law only protects expression of ideas, not the

15 ideas themselves." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 823 (9th Cir.

16 2002); *see also Rice*, 330 F.3d at 1174; *Kouf v. Walt Disney Pictures & Television*,

17 16 F.3d 1042, 1045 (9th Cir. 1994); *Berkic*, 761 F.2d at 1293. Similarity in broad,

18 abstract ideas is insufficient – the works must have significant similarity in the

19 expression of those ideas to survive the objective, extrinsic test. *Scènes à faire* –

20 elements that flow naturally from generic plot lines – similarly are not protectable.

21 *Rice*, 330 F.3d at 1175; *Berkic*, 761 F.2d at 1293. Thus, courts "must take care to

22 inquire only whether the protectable elements, standing alone, are substantially

23 similar." *Cavalier*, 297 F.3d at 822. In so doing, courts "filter out and disregard

24 the non-protectable elements in making [their] substantial similarity

25 determination." *Id.; see also Berkic*, 761 F. 2d at 1293; *Swirsky v. Carey*, 376 F.3d

26 841, 850 (9th Cir. 2004), *as amended* (Aug. 24, 2004) ("Under the *scènes à faire*

27

28 [7] Only where a plaintiff satisfies the extrinsic test will a trier of fact consider the intrinsic test, which focuses on the total concept and feel of the two works. *See Berkic v. Crichton*, 761 F.2d 1289, 1292 (9th Cir. 1985).

doctrine, when certain commonplace expressions are indispensable and naturally associated with the treatment of a given idea, those expressions are treated like ideas and therefore not protected by copyright.").

The Ninth Circuit often applies the extrinsic test to find the absence of copyright infringement as a matter of law – at both the motion to dismiss and summary judgment stages. *See*, *e.g.*, *Funky Films*, 462 F.3d at 1077 (summary judgment warranted where both works at issue involved (1) "a narrative about a small funeral home, and the lives of the family members who operate it"; (2) plot-lines involving "the death of the father . . . [who] has for decades run the business"; (3) a father whose death is "unexpected and not attributable to natural causes" (suicide in *The Funk Parlor* and a car accident in *Six Feet Under*); and (4) the presence of "two sons" who receive equal shares of the business, with the "older son . . . liv[ing] in a distant city, working outside the funeral industry"). Similarly, here, as a matter of law, Plaintiff cannot satisfy the extrinsic test:

**Plot.** "[G]eneral plot lines are not protected by copyright law; they remain forever the common property of artistic mankind." *Id.* (quoting *Berkic*, 761 F.2d at 1293); *see also Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984) ("Any similarities in plot exist only at the general level for which plaintiff[s] cannot claim copyright protection."); *Narell v. Freeman*, 872 F.2d 907, 912 (9th Cir. 1989) ("The test focuses not on basic plot ideas, which are not protected by copyright, but on the actual concrete elements that make up the total sequence of events and the relationships between the major characters."); *Berkic*, 761 F.2d at 1293 ("To some extent, both works take their general story from the adventures of a young professional who courageously investigates, and finally exposes, the criminal organization. But this degree of similarity between the basic plots of two works cannot sustain a plaintiff's claim that the works are 'substantially similar.'").

Both works here include the abstract, unprotectable premise of a comet on a collision course with Earth and *scènes à faire* flowing from it, but the similarity

1   ends there.  The Novel focuses on Stanley Caldwell's everyday life in light of the

2   news of the comet's impending collision with Earth, interspersed with interludes

3   featuring Dr. Stanley and others, including the U.S. President.  Stanley Caldwell

4   works at a copy shop, talks to his neighbor, drives to his old high school, takes care

5   of his mother – and occasionally shows interest in the news of the comet.  Dr.

6   Stanley reports the news of the comet and takes credit for its discovery on various

7   television programs and, as a result, gains some notoriety.[8]  When propositioned

8   by a millionaire's wife, he reveals that he is a virgin, but he cannot complete the

9   act because of drug use.

10       In the Film, by comparison, there is a single storyline involving the two

11  main characters, Dibiasky and Mindy, who interact with each other, various

12  governmental entities, and the media to mitigate the impact of the comet.

13  Dibiasky, who discovered the comet, is cast aside and forced to deal with gender-

14  based negative press, while Mindy is adversely influenced by the powerful people

15  around him.  He carries on an extramarital relationship with an on-air personality.[9]

16  The stories' endings are strikingly different: in the Novel, the comet does not hit

17  Earth, and Stanley Caldwell and Dr. Stanley survive; in the Film, the comet hits

18  Earth, and Dibiasky, Mindy, and most of humankind are destroyed.[10]

19       ***Themes***.  The works' themes, and even genres, differ.  The Film satirizes

20  government, politics, celebrity, and media indifference to the current major crises

21  facing the world.  The comet is a metaphor for such an existential threat, and the

22

---

23  [8] In an apparent attempt to manufacture similarity between the works at issue,
    Collier claims that "Cinnamon," who propositions Dr. Stanley, is a "starlet."  FAC
24  ¶5.  The Novel gives no such indication; Cinnamon is merely described as the wife
    of a millionaire filmmaker.

25  [9] While scientists in both works appear on a morning talk show, news coverage is a
    *scene à faire* of a disaster story.  And the serious news coverage in the Novel is
26  very different than the Daily Rip's failure to take the comet seriously in the Film.

27  [10] Plaintiff's expert mischaracterizes the works as both ending "with an epilogue
    that includes a plot twist."  ECF 26-3 ("Román Report"), at 13.  However, he
28  acknowledges that epilogues are not protectable, and that the epilogues at issue are
    "extremely different."  *Id.* at 14.

Mitchell
Silberberg &
Knupp LLP

**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

conundrum that, since the population will not believe it until they "see" it, there is a lack of media coverage and political interest in acknowledging the problem.  The Novel, by comparison, is a typical "End of the World" tale.  Even if, as Collier alleges, the Novel contains comedic elements and some characters who are apathetic to the comet, the Novel merely explores themes of basic human nature and how the world reacts once they find out Earth will be obliterated.  Such "stock" themes are unprotectable.  *See Yonay v. Paramount Pictures Corp.*, ECF 105, Court Order, No. CV 22-3846 PA (GJSX), at *10 (C.D. Cal. Apr. 5, 2024) ("the bonds that form in military service," "the sheer love of flying," and "true grit" were stock themes).

**Mood.**  The Novel is reflective and sentimental, exploring the relationship between Stanley Caldwell and his mother, who loves him unconditionally notwithstanding his feelings of unworthiness.  As the comet approaches Earth, he frantically searches for his mother.  When the comet seems about to obliterate humankind, he says, "Mama."  The scenes involving Dr. Stanley are dark.  He is excited to be associated with such a destructive force and revels in the notion that people who wronged him will die.  The Film, by contrast, walks the line between being a truly terrifying disaster movie and one long joke, due to its satire and sometimes over-the-top silliness.

**Setting.**  The Novel largely takes place in an unassuming neighborhood in Baton Rouge, Louisiana.  The Film features scenes at University of Michigan, in the White House, in New York City, and in Mindy's hometown, Ann Arbor, Michigan.[11]

**Pace.**  The Novel takes place over just one week yet lacks a sense of urgency; the characters simply wait for the comet to strike.  Stanley Caldwell goes

---

[11] Plaintiff's attempts to draw similarities between the Novel's primary setting in a working class Baton Rouge neighborhood, and a handful of scenes in the Film that take place in "smaller Midwest" cities in "flyover" states (FAC ¶35(x), 39(i), Román Report at 24-25) are overreaching.

**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

to work, visits neighbors, and attends church.  Dr. Stanley is in no rush to change the comet's course.  While the Film unfolds over several months it is nevertheless fast-paced and throughout conveys a sense of urgency.  Indeed, the main characters constantly run up against the ticking clock as the comet hurtles toward Earth.

***Dialogue.***  "[E]xtended similarity of dialogue [is] needed to support a claim of substantial similarity based upon this issue."  *Olson v. Nat'l Broad. Co.*, 855 F.2d 1446, 1450 (9th Cir. 1988).  A mere similarity in "ideas" between the dialogue in two works does not suffice.  *Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1185 n.67 (C.D. Cal 2001) ("[p]laintiffs again confuse the 'idea' conveyed by a particular piece of dialogue with the protectable 'expression' thereof").  Collier nowhere alleges such extended dialogue similarity.  In fact, the dialogue is starkly different.  For example, much of the dialogue in the Film centers on social media and technology, whereas the Novel never mentions smartphones, much less social media.[12]

***Characters.***  The Novel's protagonist, Stanley Caldwell, is an unremarkable 34-year-old who works a "dead-end job" and who lives with his mother in Baton Rouge.  While he takes an interest in the comet, his primary concern is caring for his mother.  Dr. Stanley, the comet's discoverer, has oily hair and thick glasses – a somewhat grotesque description.  In his television appearances, he is unlikeable and argumentative.  He is unapologetically evil, hoping the comet will destroy the Earth and all of humankind just so he can avenge wrongs inflicted on him earlier in life.  His thirst for revenge is more important to him than his own survival.

The Film's main characters are Dibiasky and Mindy.  Dibiasky is a beautiful and passionate female astronomer who discovered the comet.  She is headstrong and wants to save the world.  Mindy is a married, mild-mannered, handsome

---

[12] The single allegedly similar phrase identified by Plaintiff – "Don't Look Up" in the Film and "Don't Look" in the Novel – is commonplace and cannot support his claims.  FAC ¶40.  Under Plaintiff's theory, phrases such as "Get down!" and "Run!" would also be protectable.

Mitchell Silberberg & Knupp LLP

astronomer who becomes a national heartthrob.  He never wants the comet to strike Earth so others will die, and he is neither unlikeable nor argumentative.  Aside from the fact that both stories generally have astronomer characters – clearly a *scène à faire* in works about a comet approaching Earth – the astronomers in the respective works have nothing in common.[13]

Neither are the President characters substantially similar.  In the Novel, the President is an incompetent older man who commits suicide; in the Film, the President is a calculating and brash woman who does everything she can to survive, at the expense of even her own son.  Regardless, including the President of the United States as a character in a fictional work about a cataclysmic event that could destroy the entire world is an unprotectable idea and *scène à faire*.[14]

The FAC alleges that the "women who seduce the main astronomer" have a "death drive" and "literally want [] to talk about the comet as a prelude to a sexual act."  FAC ¶38(d).  First, any such similarity would be a mere idea and *scène à faire*: a discussion of the comet before sex scenes naturally would arise because both works ***involve a comet on a collision course with Earth***.  In any event, in the Novel, as they are contemplating sex, Dr. Stanley and his potential paramour are discussing his sexual history, not the comet.  Novel, RJN, Ex. B (48-49).

As noted above, that each work has characters not found in the other also establishes the absence of substantial similarity.  *See*, *e.g., Milano v. NBC Universal, Inc.*, 584 F. Supp. 2d 1288, 1297 (C.D. Cal. 2008).  The Film has no analogue to Stanley Caldwell, the main character of the Novel.  Neither does the

---

[13] Plaintiff alleges that Mindy is a composite of Dr. Stanley and Stanley Caldwell (FAC ¶38(b)), but his effort to combine elements of two very different characters to compare to Mindy underscores that Mindy is not like either Stanley.

[14] To concoct similarities, Plaintiff abstracts the storyline of each President.  He alleges the works are similar because "both Presidents abandon their posts after telling the public not to panic."  FAC ¶35(v).  However, such an abstraction is an unprotectable idea, and these characters, and their respective storylines, could not be expressed more differently.

**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Chief of Staff/President's son in the Film have an analogue in the Novel. Neither is there an analogue in the Novel to Dibiasky, the noblest character in the Film.

***Sequence of Events.*** The Film begins with Dibiasky discovering the comet. She and Mindy confirm their findings with NASA, which they then present to the President. Unsatisfied with the response, the pair leak the news to the press and appear together on a popular talk show. The President eventually confirms the threat of the comet, hatches a plan to divert it, and then decides to exploit it for commercial opportunities upon the suggestion of a billionaire CEO. As the comet nears Earth, the President and others board a spaceship to save themselves. The comet hits Earth, causing a worldwide disaster and an extinction-level event. Both main characters die. A scene reveals that a select few survived the impact by escaping on the spaceship. These survivors ended up on a lush planet 22,740 years in the future, where a bird-like predator kills the President.

In contrast, at the beginning of the Novel, Stanley Caldwell is watching a news program, during which Dr. Stanley – who has already discovered and confirmed the subject comet – opines that the comet will strike Earth in seven days. Stanley Caldwell's story, the focus of the Novel, goes on with everyday life. He works, visits his neighbor, makes an advance on his female coworker, and goes to church. He tries to avoid the rioting and looting that erupts and searches for his missing mother. When the comet does not hit Earth, he finds his mother.

Dr. Stanley's story is a separate subplot of the Novel. (The two never meet.) After Dr. Stanley warns that the comet will strike, the President announces a plan to destroy the comet. At first, the public adores and lauds Dr. Stanley, but later he becomes an object of hatred and is nearly murdered. The President commits suicide. Dr. Stanley nearly loses his virginity with the married Cinnamon, but the two never consummate the affair. When the comet misses Earth, Dr. Stanley appears on a news program claiming the comet will return to Earth in 100 million years.

1    These sequences of events could not differ more.

2    ***Random Similarities.***  Plaintiff may attempt to persuade the Court that the

3    unprotected elements on which he relies are protected when considered together as

4    an original "selection and arrangement."  However, the Ninth Circuit has made

5    clear that this theory is very narrow – otherwise it would undermine the important

6    copyright law boundaries enshrined by the idea/expression distinction.  In

7    *Skidmore*, the Ninth Circuit held *en banc* that copyright protection may be

8    extended to a combination of unprotectable elements "'only if'" (1) "the elements

9    are numerous enough"; and (2) "their selection and arrangement [are] original

10   enough" and are "*new*" or "*novel*."  *Skidmore*, 952 F.3d at 1074, 1075.  A

11   "selection-and-arrangement" claim cannot be based on random, cherry-picked

12   elements.  "[W]hat a selection and arrangement copyright protects is the *particular*

13   way in which the artistic elements form a coherent pattern, synthesis, or design."

14   *Id.* at 1074.  "Without such arrangement, there is no liability for taking 'ideas and

15   concepts' from the plaintiff's work, 'even in combination.'"  *Id.* at 1075 (quoting

16   *Rentmeester*, 883 F.3d at 1122-23).  Moreover, "a selection and arrangement

17   copyright is infringed only where the works share, in substantial amounts, the

18   'particular,' *i.e.*, the 'same,' combination of unprotectable elements."  *Skidmore*,

19   952 F.3d at 1074.  A plaintiff "cannot establish substantial similarity by

20   reconstituting the copyrighted work as a combination of unprotectable elements

21   and then claiming that those same elements also appear in the defendant's work, in

22   a different aesthetic context."  *Id.*

23        As discussed above, the FAC relies on a cherry-picked list of random

24   similarities that are either abstract or *scènes à faire* and that often mischaracterize

25   the works.  For example, in claiming that both works "have a live concert

26   performance as the comet gets close," Plaintiff compares a makeshift stage where a

27   band performs near a high school to an actual celebrity concert observed by tens of

28   millions or more.  *Compare* Novel, RJN, Ex. B (83-84), *with* Film, RJN, Ex. A

(~1:41:14-1:45:16).  Similarly, Plaintiff alleges that in both works the "[f]amily of the protagonist is re-united in the end . . . in a medium sized college town in a flyover state."  FAC ¶35(x).  Yet, Stanley Caldwell's mother went missing for a day or two, whereas the prodigal Mindy is reunited with a family that, aside from his wife, was absent from the entire Film for an extended period.  Such mischaracterizations are legion in the FAC.  As discussed above, when applying the extrinsic test, courts review the works themselves independently of a party's characterization of them – and consistently find the absence of substantial similarity as a matter of law in the face of attempts, as here, to concoct a list of random similarities.

Because Plaintiff's claim fails under the extrinsic test for substantial similarity, he has not stated a claim for copyright infringement.

## V.    THE CLAIM FOR BREACH OF IMPLIED-IN-FACT AGREEMENT FAILS.

"[T]o prevail on a cause of action for breach of implied-in-fact contract, plaintiff[] must show . . . the defendants found the ideas valuable and actually used them – that is, the defendants based their work substantially on the plaintiffs' ideas, rather than on their own ideas or ideas from other sources."  *Spinner v. Am. Broad. Cos.*, 215 Cal. App. 4th 172, 186 (2013).  "Regardless of the legal theory used to impose an obligation on the idea-recipient, the recipient is legally obligated to pay only if the idea that the recipient used was the one actually received from plaintiff."  *Ryder v. Lightstorm Ent., Inc.*, 246 Cal. App. 4th 1064, 1072-73 (2016) (quoting 5 Nimmer, Copyright (2015) The Law of Ideas, § 19D.07[A], p. 19D-86).  To raise an inference of use, Plaintiff must prove (1) access by the Film's creators to the Novel,[15] and (2) substantial similarity.  *Spinner*, 215 Cal. App. 4th at 186.

---

[15] Plaintiff's claim for breach of implied-in-fact agreement is against McKay only. Again, for purposes of this Motion, McKay assumes, but does not concede, access. *See supra* at 7-8.

Mitchell Silberberg & Knupp LLP

**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1    "The framework for proving use in an idea submission claim is parallel to the

2    framework for showing copying in a copyright claim."  *Id.*

3        In analyzing substantial similarity in idea cases, courts compare the works'

4    plots, sequences of events, characters, settings, dramatic gimmicks, tones, and

5    themes.  *See Norman v. Ross*, 2024 WL 1731781, at *27 (Cal. Ct. App. Apr. 23,

6    2024) (principle set forth in section certified for publication); *see also Ryder*, 246

7    Cal. App. 4th at 1076-78 (comparing in the two works: role of the main characters,

8    characters' motivations, interactions between characters, "significant plot

9    point[s]," specific scenes, and use of technology); *Weitzenkorn v. Lesser*, 40 Cal.

10   2d 778, 791 (1953) (comparing the "form and manner of expression"; "the 'basic

11   dramatic core'"; the "combination of characters, locale and myth"; and the

12   "characterizations, descriptions, and events"); *Henried v. Four Star Television*, 266

13   Cal. App. 2d 435, 436-37 (1968) (reviewing for commonalities in "plot,

14   motivation, subject matter, milieu, and characterization").  The requirement of

15   substantial similarity for implied-in-fact contract aligns with copyright law and

16   means that copying less than substantial material is non-actionable.  *Ryder*, 246

17   Cal. App. 4th at 1073.[16]

18       "[T]he issue [of use] is frequently resolved as a matter of law if there is no

19   substantial similarity between the works[.]"  *Ryder*, 246 Cal. App. 4th at 1076 n.9.

20   *See Henried*, 266 Cal. App. 2d at 436-37 (no substantial similarity where

21   protagonists in both works rode in chauffeur-driven Rolls Royces); *Norman*, 2024

22   WL 1731781, at *1, *29 (dismissing case on anti-SLAPP motion because of lack

23   of substantial similarity); *Klekas v. EMI Films, Inc.*, 150 Cal. App. 3d 1102, 1113

24

25   [16] In contrast to the instant case – *Benay* was a case where there was substantial
     similarity of idea as to a movie and a screenplay both titled *The Last Samurai*:

26   "[I]n both works, the protagonist [wa]s an embittered American war veteran who
     travels to Japan where he meets the Emperor, trains the Imperial Army in modern

27   warfare, fights against the samurai, and in the end is spiritually restored.  Both
     works [we]re set at the time of the Satsuma Rebellion of 1877; both works rel[ied]

28   heavily on the historical figure Saigo Takamori; and both works share[d] the same
     title."  607 F.3d at 632.

n.7 (1984) (no use where works involved "a meditative man" who returns from war, has romance with woman he knew before, goes deer hunting, is pursued by experience of war, and drives used Cadillac); *Sutton v. Walt Disney Prods.*, 118 Cal. App. 2d 598, 603 (1953) (works not similar merely because they both related to animals); *A Slice of Pie Prods., LLC v. Wayans Bros. Entm't*, 487 F. Supp. 2d 41, 48, 49, 52 (D. Conn. 2007) (dismissing California idea claim where works concerned "African American men trying to 'prove' themselves in the FBI" who pretend to be of another racial background to solve crimes).

Here, the ideas are not substantially similar.

***Plot and Sequence of Events.*** As discussed above, the plots and sequences of events of the Film and Novel differ. While both works include a comet approaching Earth, that plot point does not give rise to substantial similarity. *See Norman*, 2024 WL 1731781, at *29 (no similarities even though both works at issue involved stories about mixed-race protagonists: "white people clapping on the 1 and the 3 beats … is common fodder for comedians and musicians [and] in-laws having different political views than the main characters is a common family sitcom trope…."); *Henried*, 266 Cal. App. 2d at 436-37 ("a resemblance based solely on the use of a well-publicized, even bromidic, symbol for wealth and luxury seems grossly inadequate to sustain a claim of substantial or material similarity between elements of the two properties"); *Klekas*, 150 Cal.App.3d at 1112-13 ("the subjects of friendship, courage, honor and the effect of war on the human spirit" were general and "not protectable material in and of themselves").

Moreover, the comet plot idea plays out in entirely different ways in the Film and the Novel. Again, the Film ends with the comet ***destroying Earth*** and killing the protagonists, whereas the Novel ends with the comet ***missing Earth*** and the protagonists returning to their everyday lives. Any minor plot points Plaintiff claims are similar are insufficient to support a finding of substantial similarity. *See*

*Norman*, 2024 WL 1731781, at *29 ("minor details do not support a finding of substantial similarity").

**Characters.**  As discussed *supra*, the characters in the Film and the Novel differ even in abstract idea.  While both works contain characters who hold the occupation of astronomer and President of the United States, those general tropes cannot establish substantial similarity.  *See, e.g., id.* (works about challenges of a mixed-race person not fitting in not substantially similar); *Klekas*, 150 Cal. App. 3d at 1113, n.7 (defendants did not use plaintiff's work where both works included the characters: (1) a protagonist who is a "meditative man who is returning home from military service," (2) a "male black taxicab driver," and (3) a love interest who is "a woman he knew prior to his military service").

**Settings.**  Again, the settings of the works differ completely.  Setting a story in the city of Baton Rouge, Louisiana, with its distinctive culture and history, is a completely different idea from the settings in the Film.  *See Norman*, 2024 WL 1731781, at *29 (distinguishing between one work set in a city and the other in the suburbs).

**Dramatic Gimmicks.**  The Novel features the dramatic gimmick of a seven-day countdown to the projected arrival of the comet.  The first chapter is Day 7, and each chapter counts down one day at a time (*i.e.*, Day 6, Day 5, Day 4, etc.).  The Film, by contrast, takes place over a period of months, and does not feature the dramatic gimmick of a day-by-day countdown.  The Novel also features the literary device of switching between the points of view and stories of Dr. Stanley, the astronomer, and Stanley Caldwell, the ordinary guy.  As discussed above, Dr. Stanley and Stanley Caldwell have very different experiences as the comet approaches, with Dr. Stanley chasing fame and Caldwell continuing his ordinary life.  Their plotlines do not cross, except when Dr. Stanley is featured on a television program Caldwell is watching; they are connected only in sharing the name "Stanley."  The Film does not include this dramatic gimmick – or any

Mitchell
Silberberg &
Knupp LLP

19

**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

analogue to Stanley Caldwell's narrative (as discussed above).  The Novel also has

the dramatic gimmick of naming two characters "Stanley" and titling the book

"Stanley's Comet" to tie the characters together.  There is nothing similar in the

Film.  Finally, the Novel uses the framing device of both beginning and ending the

story with Dr. Stanley's talk-show prediction that Stanley's Comet will destroy

Earth.

The Film includes the dramatic gimmick of portraying fictional filmmakers

making a "movie within a movie" about a comet approaching Earth.  This adds an

element of absurdity and also comments on the prevalence of comet-approaching-

Earth movies.  Moreover, in the Film, fictional popstar singer Riley Bina writes a

song about the comet.  There is nothing equivalent in the Novel.  Additionally, the

Film relies heavily on fictional social media posts as a method of disseminating

information.  *See Norman*, 2024 WL 1731781, at *27 (noting differences between

works, including that "[b]ecause the series was set in the mid-1980's, there were

no cell phones, no social media").  Many pivotal moments of the Film are

accompanied by rapid-fire graphics of "viral" moments, giving the viewer the

feeling the events are happening in real-time.  Finally, the Film ends with the

dramatic gimmick of a mid-credits epilogue where the President and 2,000 people

who left Earth awake on an alien planet 22,740 years later.  By contrast, in the

Novel's epilogue, the characters return to their ordinary lives after the comet

misses Earth.

***Themes.***  As discussed in Section IV, *supra*, the themes of the works are

entirely different.  *See Norman*, 2024 WL 1731781, at *28 (even "some overlap in

theme" is insufficient where "the differences in theme far outweigh[ed] the

similarities").  As noted above, the two works do not even share the same genre.

## VI.    COLLIER'S CLAIM FOR BREACH OF IMPLIED-IN-FACT AGREEMENT IS BARRED BY THE STATUTE OF LIMITATIONS.

Under California Code of Civil Procedure Section 339(1), an action for breach of implied contract not founded upon an instrument in writing is governed by a two-year statute of limitations.  "California courts generally assume that the accrual date is the date on which the work is released to the general public" as the public release would destroy any further marketability.  *Benay*, 607 F.3d at 633; *see also Goldberg v. Cameron*, 482 F. Supp. 2d 1136, 1151 (N.D. Cal. 2007) ("Plaintiff's claim accrued when he first suffered appreciable and actual harm … With respect to *The Terminator*, this could be no later than the date on which it was released in 1984; with respect to *Terminator 2*, this could be no later than the date on which it was released in 1991.").  Here, the Film premiered on December 5, 2021, and the statute of limitations therefore ran on **December 5, 2023**.  Plaintiff filed his Complaint on **December 6, 2023**, and consequently his claim for breach of implied contract is time-barred.

On December 7, 2023 Plaintiff filed an "Application to Deem Complaint Filed as of December 5, 2023 Pursuant to Local Rule 5-4.6.2" (ECF 14),[17] which the Court denied without prejudice on December 26, 2023.  ECF 19.[18]

---

[17] After the Court issued a Notice of Deficiency, Plaintiff refiled his Application on December 11, 2023.  *See* ECF 16, 17.

[18] Plaintiff filed a renewed motion to have the Complaint deemed filed on December 5, 2023, which Defendants opposed.  ECF 29, 30.

1

**VII.    CONCLUSION**

2

    For the foregoing reasons, Defendants respectfully request that the Court

3

grant their motion and dismiss Plaintiff's claims without leave to amend.

4

Dated: May 13, 2024                                    EMILY F. EVITT

5                                                      ROBERT H. ROTSTEIN
                                                       MITCHELL SILBERBERG & KNUPP LLP

6

7
                                                 By:      /s/Emily F. Evitt
8                                                      _____
                                                       Emily F. Evitt
9                                                      *Attorneys for Defendants Adam McKay,*
                                                       *Netflix, Inc., David Sirota, and*
10                                                     *Hyperobject Productions*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendants Adam McKay, Netflix, Inc., David Sirota, and Hyperobject Productions, certifies that this Memorandum of Points and Authorities contains 6,984 words and does not exceed 25 pages, which complies with the word limit of L.R. 11-6.1 and the Court's Standing Order dated October 24, 2023.

Dated: May 13, 2024                MITCHELL SILBERBERG & KNUPP LLP

By: ___/s/Emily F. Evitt_____

Emily F. Evitt
*Attorneys for Defendants Adam McKay,*
*Netflix, Inc., David Sirota, and*
*Hyperobject Productions*

Mitchell
Silberberg &
Knupp LLP

23
**MOTION TO DISMISS FIRST AMENDED COMPLAINT**