1  **LOWE & ASSOCIATES, P.C.**
2  Steven T. Lowe (SBN 122208)
   *steven@lowelaw.com*
3  Aleksandra Hilvert (SBN 258463)
   *aleksandra@lowelaw.com*
4  8383 Wilshire Blvd, Suite 1038
5  Beverly Hills, California 90211

6  Attorneys for Plaintiff,
7  **WILLIAM COLLIER**

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11

12  **WILLIAM COLLIER**, an Individual,        Case No. 2:23-cv-10227-SPG-DFM

13                                             Hon. Sherilyn Peace Garnett
                     Plaintiff,
14          v.                                 **PLAINTIFF'S *OPPOSITION* TO
                                               NOTICE OF MOTION AND
15                                             MOTION OF DEFENDANTS
    **ADAM MCKAY**, an Individual;            **ADAM MCKAY, NETFLIX, INC.,
16  **NETFLIX**, a Delaware corporation,       DAVID SIROTA, AND
    **DAVID SIROTA**, an Individual;          HYPEROBJECT PRODUCTIONS
17  **HYPEROBJECT INDUSTRIES**, a              TO DISMISS PLAINTIFF'S FIRST
    Delaware limited liability company;        AMENDED COMPLAINT, IN ITS
18  **BLUEGRASS FILMS**, a Delaware            ENTIRETY, PURSUANT TO FED.
19  limited liability company; and DOES 1-     R. CIV. P. 12(B)(6);
    50, inclusive;                             MEMORANDUM OF POINTS AND
20                                             AUTHORITIES IN SUPPORT
21                   Defendants.               THEREON**
22

23

24                                             Hearing:      July 17, 2024
                                               Time:         1:30pm
25                                             Courtroom:    5-C

26

27

28

PLAINTIFF'S *OPPOSITION* TO NETFLIX'S MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................... 1

II.    ARGUMENT ...................................................................................... 2

    A.    DISMISSAL OF COPYRIGHT INFRINGEMENT CLAIMS AT THE PLEADING STAGE IS DISFAVORED. ................................................ 2

    B.    PLAINTIFF HAS PLAUSIBLY ALLEGED COPYRIGHT INFRINGEMENT

        1. The Court Should Not Attempt to Perform the Analytical Dissection of the Literary Works At Issue in this Case .................. 2

        2. The Court Should Not Attempt to Perform the Analytical Dissection of the Literary Works At Issue in this CIf the Court Does Decide to Perform the Substantial Similarity Analysis, the Court is Required to Follow Certain Rules ..................................... 6

            a. Rule 1: Scènes à Faire Are Still Considered; and Defendants Have the Burden of Proof To Establish that A Particular Element is a Scènes à Faire .................................. 6

            b. Rule 2: The Court Is Looking for "Patterns" (Shaw v. Lindheim) ............................................................................. 8

            c. Rule 3: The Court Must Look At the Qualitative Significance of Each Similarity ............................................. 8

            d. Rule 4: Both Works Do Not Have to be Similar in Their Entirety; Even Small But Important Similarities Are Enough ................................................................................... 9

            e. Rule 5: The Plaintiff's Manuscript Is Entitled to Broad Protection; Similarities Do Not Have to Be Identical .......... 9

PLAINTIFF'S *OPPOSITION* TO NETFLIX'S MOTION TO DISMISS

f. Rule 6: Defendants Cannot Avoid Liability by the Addition of Elements Which Do Not Appear In the Manuscript. (The Court Must Only Look at the Alleged Similarities and Ignore Dissimilarities In Making a Determination)....................................................................10

g. Rule 7: Before Engaging In An Analysis, the Court Should Read/Watch Each Work Twice to Fully Digest the Material At Issue......................................................................11

3. The Works Are Substantially Similar.......................................11

a. Defendants Have Mostly Applied the Wrong Test ........12

b. Established Caselaw Provides that as Few As Six (6) Articulable Similarities Can Be Sufficient to Render a Claim Plausible on its Face; Here We have More Than 25 ....................................................................................13

c. Plaintiff's FAC Plausibly Alleges Substantial Similarity ....................................................................................14

C.    PLAINTIFF HAS SUFFICIENTLY ALLEGED A CLAIM FOR BREACH OF IMPLIED-IN-FACT CONTRACT..........................................20

D.    PLAINTIFF'S IDEA THEFT CLAIM IS TIMELY..............................22

III.    CONCLUSION..................................................................................23

PLAINTIFF'S *OPPOSITION* TO NETFLIX'S MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alfred v. Walt Disney Co.*,
  821 Fed. App'x. 727 (9th Cir. 2020) ........................................................... 1, 3, 7, 9

*Baxter v. MCA, Inc.*,
  812 F.2d 421 (9th Cir. 1987) .................................................................................. 9

*Benay v. Warner Bros. Entm't, Inc.*,
  607 F.3d 620 (1970) ............................................................................................ 22

*Blaustein v. Burton*,
  9 Cal.App.3d 161 (1970) ................................................................................ 22, 23

*Bradbury v. CBS*,
  287 F.2d 478 (9th Cir. 1961) .............................................................................. 10

*Capcom Co. v. MKR Group, Inc.*,
  No. C 08-0904 RS, 2008 WL 4661479 (N.D. Cal. Oct. 20, 2008) .......................... 7

*Cavalier v. Random House, Inc*,
  297 F.3d 815 (9th Cir. 2002). ............................................................................. 12

*Donahue v. United Artists Corp*,
  2 Cal. App. 3d 794 (1969) .................................................................................. 22

*Donahue v. Ziv Television Programs, Inc.*,
  245 Cal. App. 2d 593 (1966) .............................................................................. 21

*Ets-Hokin v. Skyy Spitits Inc.*,
  225 F.3d 1068 (9th Cir. 2000) ............................................................................... 7

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991) ................................................................................... 2, 7, 16

*Fleener v. Trinity Broad. Network*,

PLAINTIFF'S *OPPOSITION* TO NETFLIX'S MOTION TO DISMISS

203 F. Supp. 2d 1142 (C.D. Cal. 2001) .................................................. 3, 7, 9, 11, 13

*Funky Films, Inc. v. Time Warner Entm't, Inc.*,
    462 F.3d 1072 (9th Cir. 2006) ................................................................... 12

*Gregorini v. Apple Inc.*,
    No. 20-55664, 2022 WL 522307 (9th Cir. Feb. 22, 2022).......................................... 3

*Hanagami v. Epic Games, Inc.*,
    85 F.4th 931 (9th Cir. 2023)........................................... 2, 8, 9, 12, 13, 19

*L.A. Printex Indus. v. Aeropostale, Inc*.,
    676 F.3d 841 (9th Cir. 2012) .................................................................. 7, 10

*Landsberg v. Scrabble Crossword Game Players, Inc.*,
    736 F.2d 485 (9th Cir. 1984) ...................................................................... 10

*Mattel, Inc. v. MGA Ent., Inc.*,
    616 F.3d 904 (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21, 2010)............ 10

*Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir. 2002) *overruled on other grounds*
    *by Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th
    Cir. 2020)........................................................................... 1, 2, 6, 8, 9, 13,

*Milano v. NBC Universal, Inc.*,
    584 F. Supp. 2d 1288 (C.D. Cal. 2008) ..................................................... 19

*New Old Music Group Inc. v. Gottwald*,
    122 F.Supp.3d. 78 (S.D.N.Y. 2015) ......................................................... 1

*Newton v. Diamond*,
    349 F.3d 591 (9th Cir. 2003) ................................................................. 10

*Norman v. Ross*,
    101 Cal. App. 5th 617 (2024) ................................................................ 21

*Ryder v. Lightstorm Entm't, Inc*.,
    246 Cal.App.4th 1064 (2016) ................................................................. 20

*Sanchez v. Bay Area Rapid Transit Dist.*,
    No. 13-CV-1885 YGR, 2013 WL 4764485 (N.D. Cal. Sept. 5, 2013).................... 13

PLAINTIFF'S *OPPOSITION* TO NETFLIX'S MOTION TO DISMISS

*Shaw v. Lindheim,*
     919 F.2d 1353 (9th Cir. 1990) ..................................................................... 8, 18, 20

*Sheldon v. Metro-Goldwyn Pictures Corp.,*
     81 F.2d 49 (2d Cir. 1936) ........................................................................................ 10

*Silas v. HBO,*
     201 F. Supp.3d 1158 (C.D. Cal 2016) *aff'd* 713 F. App'x 626 (9th Cir. 2018) ........ 7

*Three Boys Music Corp. v. Bolton,*
     212 F.3d 477 (9th Cir. 2000) ...................................................................................... 7

*Tracy Anderson Mind & Body, LLC v. Roup*, No. CV 22-4735-RSWL-EX, 2022 WL
     17670418 (C.D. Cal. Dec. 12, 2022) ......................................................................... 11

*Twentieth Century-Fox Film Corp, v. MCA, Inc.,*
     715 F.2d 1327 (9th Cir. 1983) ........................................................................ 3, 11, 13

*Universal Pictures Co. v. Harold Lloyd Corp.,*
     162 F.2d 354 (9th Cir. 1947) ...................................................................................... 9

*Zindel v. Fox Searchlight Pictures Inc.,*
     815 F. App'x 158 (9th Cir. 2020) ............................................................................... 2

**Treatises**

Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.03 (rev. ed. 2018)
     ...................................................................................................................................... 8

PLAINTIFF'S *OPPOSITION* TO NETFLIX'S MOTION TO DISMISS

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

Plaintiff William Collier ("Plaintiff") hereby submits his Opposition to the

3    Motion to Dismiss ("MTD") the First Amended Complaint ("FAC") filed by

4    Defendants Adam McKay, Netflix, Inc., David Sirota, and Hyperobject Productions

5    (collectively, "Defendants").

6    ## I.     INTRODUCTION

7    Defendants' core argument is that the works at issue lack substantial similarity.

8    Defendants ask that the Court filter out many of the similarities because they are

9    *scènes à faire* or otherwise unprotectable; however Courts must "compare the original

10   selection and arrangement of the unprotectible elements between the two works".

11   *Alfred v. Walt Disney Co.*, 821 Fed. App'x. 727, 729 (9th Cir. 2020) (finding a

12   combination of elements sufficient to plausibly allege substantial); *see New Old Music

13   Group Inc. v. Gottwald,* 122 F.Supp.3d. 78, 94 (S.D.N.Y. 2015) ("'Excessive

14   splintering' of the elements of a work…. result in almost nothing being

15   copyrightable.").

16   Here, the FAC and the reports of accomplished USC Professor David Román

17   ("Prof. Román"), identify more than 25 significant similarities between the two works.

18   Taken together they "belie[] any claim of literary accident". *Metcalf v. Bochco,* 294

19   F.3d 1069, 1074 (9th Cir. 2002) *overruled on other grounds by Skidmore as Tr. for

20   Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020). These

21   similarities are by no means random; they are tied together by common theme, plot,

22   and sequence of events.

23   As to implied-in-fact contract claims, they require a lesser threshold for

24   substantial similarity than copyright infringement claims. Thus, Plaintiff has also

25   plausibly alleged an 'idea theft' claim.  Lastly, Defendants are mistaken that Plaintiff

26   filed outside of the 2-year statute of limitations. *See*, § II(C)-(D), *infra*.

27

28                                        - 1 -

## II.  ARGUMENT

### A. DISMISSAL OF COPYRIGHT INFRINGEMENT CLAIMS AT THE PLEADING STAGE IS DISFAVORED.

Dismissal of copyright claims "at the pleading stage" is "generally disfavored" in the Ninth Circuit. *Hanagami v. Epic Games, Inc.*, 85 F.4th 931, 945 (9th Cir. 2023). That is because "[i]n many cases, '[a]pplication of [t]he extrinsic test requires analytical dissection of a work and expert testimony.'" *Hanagami*, 85 F.4th at 945. Expert testimony is required "because most judges are not sufficiently trained in the specifics of the art form at issue to make reliable conclusions about similarity." *Id.*; *see also Zindel v. Fox Searchlight Pictures Inc.*, 815 F. App'x 158, 159 (9th Cir. 2020) (reversal of motion to dismiss where similarities existed between a play and a movie). Broadly, "the Court must only consider whether the plaintiff has plausibly alleged that the two works share substantial similarity." *Hanagami,* 85 F. 4th at 944. As more fully set forth herein, Plaintiff has more than plausibly accomplished that via his FAC.

### B. PLAINTIFF HAS PLAUSIBLY ALLEGED COPYRIGHT INFRINGEMENT.

A claim for copyright infringement requires that (1) plaintiff owns a valid copyright; and (2) that the defendants copied protected aspects of the work. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (concluding that copying the selection and arrangement of unprotectable elements is actionable). Defendants do not challenge the first element; thus the analysis centers on copying. Copying is established by alleging and proving "access" and "substantial similarity". *Metcalf,* 294 F.3d at 1072.  In the present case, Defendants are not challenging allegations of access, presumably because those allegations are sufficient.

### 1. The Court Should Not Attempt to Perform the Analytical Dissection of the Literary Works At Issue in this Case

PLAINTIFF'S *OPPOSITION* TO NETFLIX'S MOTION TO DISMISS

Respectfully, as a preliminary matter, the Court should not attempt to conduct a comparison of the two works on a Rule 12(b)(6) motion because the Court is not sufficiently trained in the comparison of literary works, including, without limitation, evaluating the existence of, originality of, or qualitative importance of alleged similarities, or patterns of similarity, between the literary works at issue. First, expert testimony is necessary for multiple reasons including determining the "qualitative significance" of each alleged similarity. *See, e.g.*, *Alfred,* 821 F. App'x at 729 (reversing dismissal where expert testimony regarding the qualitative significance of the similarities and whether certain elements were "*scènes à faire*" would aid the trier of fact); *see also*, *Gregorini v. Apple Inc.*, No. 20-55664, 2022 WL 522307, at *1 (9th Cir. Feb. 22, 2022) ("In particular, expert testimony would aid the court in objectively evaluating similarities in cinematic techniques, distinguishing creative elements, from *scènes à faire*, determining the extent and qualitative importance of similar elements between the works, and comparing works in the different mediums of film and television."); *Fleener v. Trinity Broad. Network* 203 F. Supp. 2d 1145-46, 1147 (C.D. Cal. 2001) (finding expert testimony appropriate for extrinsic analysis at summary judgment stage in concluding that six (6) significant similarities in two literary works was sufficient). Here, the Court is not an expert in comparative literature like Plaintiff's expert, Prof. Román, who has trained for many years in the comparison of literary works. (*See* FAC Ex. A (Román C.V.)) **The Court should not substitute its opinion for that of a highly trained expert in performing an in-depth comparison of a 119-page manuscript and a two-hour and twenty-three-minute film.**

This Court should follow the binding Ninth Circuit precedent set forth in *Twentieth Century-Fox Film Corp. v. MCA, Inc*., where the Court refrained from making a substantial similarity determination of *Star Wars* and *Battlestar Galactica* at

- 3 -

the **summary judgment stage**, reserving the issue for a jury unless the complete lack of similarity is glaringly obvious. 715 F. 3d 1327, 1329 (9th Cir. 1983).

In the present case, Plaintiff has identified at least 25 similarities. The following is a shorthand list of those similarities for the Court's convenience:

| Plot/Sequence of Events (FAC at 11-12) |
| --- |
| 1) Comet's discovery shared on talk show by the discovering astronomer; |
| 2) Powerful people undermine discoverer's credibility; |
| 3) Scientist is met with complete skepticism, if not complete indifference, from the government, media, and society at large; |
| 4) Subsequent whirlwind media tour; garner fame |
| 5) Male astronomers become sex symbols |
| 6) "Shoot the messenger" mentality arises |
| 7) Presidents focus on political power, downplay comet |
| 8) Presidents emphasize long-range policy initiatives |
| 9) Government plans to use nuclear arms on comet |
| 10) Powers that be come around and recognize the imminent danger; they hatch a plan to destroy the comet, but plan fails |
| 11) Government recruits coalition to execute plan |
| 12) Political considerations undermine plan; aborted |
| 13) Public discusses immediacy and severity of threat |
| 14) Widespread looting grips the nation; massive uprisings and social chaos ensue; |
| 15) The comet becomes visible—"don't look (up)" |
| 16) Discussions of God and impending doom |
| 17) Concert coincides with arrival of comet |
| 18) Ultimately, those in power abandon their constituents |

PLAINTIFF'S *OPPOSITION* TO NETFLIX'S MOTION TO DISMISS

| 19) The protagonists reunite with their families |
| --- |

| **Characters**<br>**(FAC at 14-15; Ex. C p. 16-20)** ||
| --- | --- |
| 1) <u>Dr. Stanley / Dr. Mindy</u><br>  a. Low-level scientist<br>  b. Middle aged<br>  c. White<br>  d. Nerdy<br>  e. Bespectacled<br>  f. Shabbily dressed<br>  g. Questionably groomed<br>  h. Unassuming<br>  i. Emerges as sex symbol<br>2) <u>Stanley Caldwell / Dr. Mindy</u><br>  a. Humble background<br>  b. Modest domestic life<br>  c. Notwithstanding early romantic dalliances, go to great lengths to spend their final moments in the company of close family | 3) <u>President(s) Jennings / Orlean</u><br>  a. Don't take warnings about the comet seriously<br>  b. Fixated on political optics<br>  c. Appearance that falsely portrays competence<br>  d. Annoyed by comet<br>  e. Cowardly abdication of duty<br>4) <u>Cinnamon / Brie Evantee</u><br>  a. Rejects fidelity as value<br>  b. Strong association between death drive and erotic desires<br>  c.  Both are attractive<br>  d. Lives in the public eye<br>  e. Usually dates attractive, successful, powerful men |
| **<u>Themes</u>**<br>**(FAC at 10-13; Ex. B at 3; Ex. C at 22)** ||
| 1)  Politics<br>2) Celebrity Culture<br>3) Media<br>4) Human Nature ||

- 5 -

PLAINTIFF'S *OPPOSITION* TO NETFLIX'S MOTION TO DISMISS

| |
|---|
| 5) Society's distrust of science |
| 6) Greed |
| 7) Elitism |
| 8) Vanishing communal ties in modern America |

| **Settings**<br>**(FAC, pg. 16, 24)** |
|---|
| 1) New York City |
| 2) White House |
| 3) Washington DC |
| 4) NASA Headquarters |
| 5) Morning Talk Show Set |
| 6) Small-town Grocery Store |
| 7) Medium-sized College Town in a "Fly-Over" State |
| 8) Concert Venue |

The foregoing is by no means an exhaustive recitation of the patterns of similarities between the two works at issue.

**2.  If the Court Does Decide to Perform the Substantial Similarity Analysis, the Court is Required to Follow Certain Rules**

The Ninth Circuit has established several important rules that must be followed if the Court chooses to undertake a substantial similarity analysis at this stage. These rules are conspicuously absent from the Defendants' Motion. They are as follows:

**a.  Rule 1: *Scènes à Faire* Are Still Considered; and Defendants Have the Burden of Proof To Establish that A Particular Element is a *Scènes à Faire***

PLAINTIFF'S *OPPOSITION* TO NETFLIX'S MOTION TO DISMISS

A *scènes à faire* is an element that is so common that it is considered "indispensable" to a particular genre. *Metcalf,* 294 F. 3d at 1069.  Further, categorizing a similarity as a *scènes à faire* is an affirmative defense to which defendants have the burden of proof. *Ets-Hokin v. Skyy Spitits Inc.,* 225 F.3d 1068, 1082 (9th Cir. 2000). In other words, just because Defendants say something is a *scènes à faire* does not make it so.  Even pointing to specific elements of prior works does not establish that a particular element is a "*scènes à faire*". *See Capcom Co. v. MKR Group, Inc.,* No. C 08-0904 RS, 2008 WL 4661479 at *4 (N.D. Cal. Oct. 20, 2008) (declining to take judicial notice of numerous other zombie movies and certain ideas and elements common and prevalent in such movies and games); *see also*, *Silas v. HBO*, 201 F. Supp.3d 1158, 1170 (C.D. Cal 2016) *aff'd* 713 F. App'x 626, 627 (9th Cir. 2018) ("The court would therefore deny Defendants' Request for Judicial Notice with respect to elements common to prior works."). In *Fleener v. Trinity Broad. Network,* the court noted that "Defendants have not… brought forward material evidence compelling this Court to conclude that, as a matter of law, *any* of these elements are standard or indispensable elements" of the genre. 203 F.Supp.2d at 1150-51.

Furthermore, merely identifying an element as **unprotectable** in and of itself, whether it be a *scènes à faire*, a plot or a character, is by no means the end of the inquiry.  That is because, as previously mentioned, the selection and arrangement of unprotectable elements is protectable under current Ninth Circuit law. *See, e.g., L.A. Printex Indus. v. Aeropostale, Inc*., 676 F.3d 841, 849 (9th Cir. 2012) *as amended on denial of reh'g and reh'g en banc* (June 13, 2012) ("Original selection, coordination, and arrangement of unprotectable elements may be protectable expression.") (citing *Feist Publ'ns,* 499 U.S. at 349); *see also Alfred*, *supra* at pg. 727; *see also Three Boys Music Corp. v. Bolton,* 212 F.3d 477, 483 (9th Cir. 2000) (holding that a "jury may

PLAINTIFF'S *OPPOSITION* TO NETFLIX'S MOTION TO DISMISS

find a combination of unprotectible elements to be protectible under the extrinsic test because the over-all impact and effect indicate substantial appropriation.").

Thus, contrary to Defendants' arguments, the Court should not "filter out" unprotectable elements, including *scènes à faire* — they are considered in a selection and arrangement analysis.

### b. **Rule 2: T h e Court Is Looking for "Patterns" (Shaw v. Lindheim)**

In a seminal case, the Ninth Circuit **reversed the grant of summary judgment** where two works contained **eight (8)** similar components between theme, plot, characters, and dialogue. *Shaw v. Lindheim*, 919 F.2d 1353, 1355 (9th Cir. 1990) *overruled on other grounds Skidmore*, 952 F.3d at 1051. Although some individual similarities alone were not protectable, the pattern of repeated similarities throughout the works was enough to create a triable question of substantial similarity. *Id.* "**Where plot is… properly defined as 'the "sequence of events" by which the author expresses his "theme" or "idea,"' it constitutes a pattern which is sufficiently concrete so as to warrant a finding of substantial similarity if it is common to both plaintiff's and defendant's works.**" *Id; see also* Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.03 (rev. ed. 2018);. *see also Metcalf,* 294 F. 3d at 1074 (finding substantial similarity in a combination of unprotectable elements in a television screenplay).

### c. **Rule 3: The Court Must Look At the Qualitative Significance of Each Similarity**

The Ninth Circuit has recently found that "…no bright line rule exists as to what quantum of similarity is permitted before crossing into the realm of substantial similarity." *Hanagami*, 85 F. 4th at 945 (citing *Baxter v. MCA, Inc.*, 812 F.2d 421, 425 (9th Cir. 1987). **That means that even if a copied portion is relatively small in proportion to the entire work, if qualitatively important, the finder of fact may**

- 8 -

**properly find substantial similarity.”** *Id.* (emphasis added). For example, similarities were striking where (among other things) the works’ main characters were both surgeons deciding between financial success versus emotionally rewarding work. *Metcalf,* 294 F.3d at 1073.[1] The court found the qualitative significance of these similarities to be so strong that “the totality of the similarities… belies any claim of literary accident.” *Id.* (quoting *Shaw* 919 F.2d at 1363).

### d. Rule 4: Both Works Do Not Have to be Similar in Their Entirety; Even Small But Important Similarities Are Enough

It is well established that substantial similarity does not mean that the entirety of both works are similar. *See, e.g., Hanagami,* 85 F. 4th at 945. This has long been the rule; it has been held that similarity with respect to only one sequence of plaintiff’s motion picture (representing 20 percent of the entire film) was “sufficient to constitute substantial similarity.” *Universal Pictures Co. v. Harold Lloyd Corp.*, 162 F.2d 354, 361 (9th Cir. 1947); *see also Baxter v. MCA, Inc.,* 812 F.2d 421, 425 (9th Cir. 1987) (same). Thus, Defendants will not be heard to complain that the use was such a ‘small one’ if the use was more than *de minimis*. *Alfred,* 821 Fed. App’x. at 729.

### e. Rule 5: The Plaintiff’s Manuscript Is Entitled to Broad Protection; Similarities Do Not Have to Be Identical

Literary works such as the Novel are afforded ‘thick’ copyright protection, meaning non-literal, non-identical similarities can be used to establish substantial similarity. Nimmer & Nimmer, *supra*, § 13.03 at 13-3; *see, e.g., Fleener,* 203 F. Supp.

---

[1] Other similarities in *Metcalf* include: “Both …works are set in overburdened county hospitals in inner-city Los Angeles with mostly black staffs. Both deal with issues of poverty, race relations and urban blight. The works’ main characters are both young, good-looking, muscular black surgeons who… [become] romantically involved with…hospital administrators …In both works, the hospital's bid for reaccreditation is vehemently opposed by a Hispanic politician.” *Metcalf*, 294 F.3d at 1073-74. These similarities are quantitatively and qualitatively indistinguishable from the present case.

PLAINTIFF’S *OPPOSITION* TO NETFLIX’S MOTION TO DISMISS

2d at 1149 ("Capable of infinite expression, [books] are afforded 'thick' copyright protection"); *see also Mattel, Inc. v. MGA Ent., Inc.*, 616 F.3d 904, 913-14 (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21, 2010) ("If there's a wide range of expression . . ., then copyright protection is 'broad' and a work will infringe if it's 'substantially similar' to the copyrighted work . . . if there's only a narrow range of expression . . ., then copyright protection is 'thin' and a work must be 'virtually identical' to infringe."); *Landsberg v. Scrabble Crossword Game Players, Inc.,* 736 F.2d 485, 488 (9th Cir. 1984) (fictional works entitled to broader protection than factual works).

In the present case, both works are fictional, and Plaintiff's Novel is a literary work; thus, it is entitled to "thick protection". *See, e.g., L.A. Printex,* 676 F.3d at 851 (it is not necessary that Defendants' design be 'virtually identical' to infringe); *See also* Nimmer & Nimmer, *supra* §13.03 at 13-3 ("Copyright cannot be limited literally to the text, or else a plagiarist would escape liability by immaterial variations."); *see also Bradbury v. CBS*, 287 F.2d 478, 485 (9th Cir. 1961) (**"Slight differences and variations will not serve as a defense" to copyright infringement.**) (emphasis added).

### f.  Rule 6:  Defendants Cannot Avoid Liability By the Addition of Elements Which Do Not Appear In the Manuscript. (The Court Must Only Look At the Alleged Similarities and Ignore Dissimilarities In Making a Determination)

The Court must disregard superficial changes Defendants make to disguise copying.  *See, e.g., Newton v. Diamond*, 349 F.3d 591, 597 (9th Cir. 2003) (measuring the "significance of the copied segment in the defendant's work would allow an unscrupulous defendant to copy large or qualitatively significant portions of another's work and escape liability by burying them beneath non-infringing material in defendant's own work"). It has long been established that **"[n]o plagiarist can excuse the wrong by showing how much of the work he did not pirate."** *Sheldon v. Metro-*

- 10 -

*Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir. 1936). Thus, the Court's only function (or that of the trier of fact) is to examine the similarities, and determine whether standing alone they are substantial.

### g. <u>Rule 7: Before Engaging In An Analysis, the Court Should Read/Watch Each Work Twice to Fully Digest the Material At Issue</u>

One of the dangers of the Court conducting a substantial similarity analysis is that similarities do not always jump out at the audience on the first pass. Rather, a close, analytical examination of both works is necessary to be able to fully perceive the similarities. Indeed, some courts have refused to engage in the necessary analytical dissection on a motion to dismiss given it would require a "detailed factual analysis". *See Tracy Anderson Mind & Body, LLC v. Roup*, No. CV 22-4735-RSWL-EX, 2022 WL 17670418, at \*3 (C.D. Cal. Dec. 12, 2022) (citing *Thomson v. HMC Grp.*, No. CV1303273DMGVBKX, 2014 WL 12589312, at \*3 (C.D. Cal. Feb. 18, 2014).

At least two examinations of each work are strongly encouraged if the Court is going to venture to do the comparison. Robert F. Helfing, *Substantial Similarity in Literary Infringement Cases: A Chart For Turbid Waters*, 21 UCLA Ent. L.Rev, 29-31 (2014). However, since reasonable minds could differ, the Court should leave comparison to the ultimate trier of fact. *Twentieth Century-Fox Film Corp, v. MCA, Inc.*, 715 F.2d 1327, 1328 (9th Cir. 1983)

### 3. <u>The Works Are Substantially Similar</u>

- 11 -

In concluding that "as a matter of law" Collier "cannot satisfy the extrinsic test", Defendants rely on two tactics—each explicitly repudiated by the Ninth Circuit. (MTD 16) First, they "attempt to reclassify [almost] *every* relied-upon concrete" similarity as a *scènes à faire* and second, they emphasize minor differences to the point of "dissection run amok." *Fleener,* 203 F. Supp. 2d at 1150-51. Here too, Defendants have not brought forward **any** evidence to support their repeated assertion that instances of evident similarity are nothing more than *scènes à faire* of the disaster genre.  In so doing, they have failed to carry their burden of proof.  And, as mentioned, that is by no means the end of the inquiry.

Furthermore, Defendants focus the Court on 'how much of his work he did not pirate.' Yet, here, Defendants repeatedly describe any and all articulable similarities as *scènes à faire* or offer nothing more than slight differences and variations to attempt to negate Plaintiff's valid case.  At the end of the day, if the Court were to perform the analysis using the required 'rules' articulated hereinabove, it would find that, at a minimum, reasonable minds can differ as to whether the works are substantially similar.

### a. <u>Defendants Have Mostly Applied the Wrong Test</u>

Defendants rely on both *Funky Films, Inc. v. Time Warner Entm't, Inc.*, and *Cavalier v. Random House, Inc.* in support of their arguments. (MTD 8-9); 462 F.3d 1072, 1077, 1081 (9th Cir. 2006); 297 F.3d 815, 822, 823 (9th Cir. 2002). However, both cases are distinguishable because they (1) incorrectly utilized only the filtration test (which filters out all unprotectable elements *ab initio*), rather than the selection and arrangement test; (which includes unprotectable elements in the analysis); and (2) incorrectly consider dissimilarities in their analysis.  As previously mentioned, the correct test is the selection and arrangement test which may arise from a "pattern, synthesis, or design of unprotectable elements".  *Hanagami*, 85 F. 4th at 942.

PLAINTIFF'S *OPPOSITION* TO NETFLIX'S MOTION TO DISMISS

**b. <u>Established Caselaw Provides that as Few As Six (6) Articulable Similarities Can Be Sufficient to Render a Claim Plausible on its Face; Here We have  More Than 25</u>**

In addition to showing that relatively few articulable similarities are required to survive a motion to dismiss under Rule 12(b)(6), a survey of Ninth Circuit cases also shows that (1) the required quantum of similarity turns on the "cumulative weight of the similarities" as they stand at the pleading stage and (2) that the "cumulative weight" of articulable similarities is not tied to a strict assessment of each extrinsic category, but rather accounts for individual similarities even when they fall under different categories—or are individually unprotectable. *Metcalf*, 294 F.3d  at 1074.  In fact, in *Fleener*, this Court held that "six common elements were sufficient to permit a jury to find substantial similarity." 203 F. Supp. 2d at 1145-46.

By way of yet another example, in *Twentieth Century-Fox Film Corp, v. MCA, Inc.*, the Ninth Circuit reversed summary judgment and considered "whether defendants' *Battlestar:Galactica* production was so dissimilar to plaintiffs' *Star Wars* works" that the district court was justified in granting defendants' motion for partial summary judgment on the question of substantial similarity. 715 F.2d 1327, 1328 (9th Cir. 1983). The appellate court explicitly declined to offer an "opinion [on] whether the films are substantially similar as to either idea or expression." *Id.* at 1329  . Nevertheless, the court was firm in its conviction that "reasonable minds could differ" as to the factual question of substantial similarity. *Id*. To support its reasoning the court listed a total of thirteen articulable similarities between the works. *Id*. at 1329 fn 5.

Here, Plaintiff's FAC alleges more than 25 concrete similarities in the works which are further highlighted hereinabove. (FAC ¶26-41)[2] Therefore, not only has

---

[2] The court is permitted to consider the reports of Professor David Román attached as Exhibit B and C to the FAC (Dkt. 26-2 and 26-3). Expert reports are commonly attached to complaints; and expert testimony is not barred from being plead directly into a complaint.  *Sanchez v. Bay Area Rapid Transit Dist.*, No. 13-CV-1885 YGR, 2013

PLAINTIFF'S *OPPOSITION* TO NETFLIX'S MOTION TO DISMISS

Plaintiff satisfied the extrinsic test for purposes of the instant Motion, but he has made sufficient factual allegations "to raise a right to relief above the speculative level' and to 'state a claim to relief that is plausible on its face.'" *Hanagami*, 85 F.4th at 945.

### c.  Plaintiff's FAC Plausibly Alleges Substantial Similarity

**Plot:**  Defendants claim that any and all similarities between the works' plots are "*scènes à faire* flowing" from the "unprotectable premise of a comet on a collision course with Earth." (MTD 9-10.)  However, Defendants have not even attempted to meet their evidentiary burden on this issue. The Defendants' emphasis on the Novel "focusing" on Stanley Caldwell's everyday life is a red herring.  In fact, the Novel toggles back and forth between Stanley Caldwell and Dr. Stanley – the man who discovered the comet. The story is not "focused" solely on the perspective of Stanley Caldwell as Defendants postulate.[3]

Grasping at straws, Defendants also attempt to use slight differences to distinguish overarching plot points common to both works. For instance, Defendants claim that "the serious news coverage in the Novel is very different than The Daily Rip's failure to take the comet seriously in the film." (MTD 9) However, as Dr. Román pointed out, it is "significant that" in both works news of the comet first reaches the public via "a morning talk show given that the genre… is one that includes both news and entertainment and is generally casual in tone." (FAC, Ex. C 13) It is also telling that, in both works, the news of the comet's imminent approach was delivered via television by the very astronomer who discovered the comet – not a politician, or the President, or a journalist of some sort. It could have been delivered via satellite text

---

WL 4764485, at *9 (N.D. Cal. Sept. 5, 2013) ("There is no inflexible rule governing the sort of written instruments that may be attached to a pleading. Expert reports … are commonly attached to complaints").

[3] In fact, defendants admit so much in their Motion when they argue that "[t]he Novel also features the literary device of switching between the points of view and stories of Dr. Stanley, the astronomer, and Stanley Caldwell, the ordinary guy." MTD. pg. 19.

PLAINTIFF'S *OPPOSITION* TO NETFLIX'S MOTION TO DISMISS

message, press conference or otherwise – but instead both are delivered on a light morning news show. This, in itself belies any claim of literary accident. Furthermore, it is noteworthy that in both works the message falls on deaf ears.

It is also important to note that Defendants completely sidestep a significant number of plot similarities which Prof. Román identified.[4] In short, Defendants have **failed** to provide the Court with any factual or legally valid basis by which to somehow eliminate the similarities in plot alleged in Collier's complaint.

**Themes:** Defendants correctly assert that *Don't Look Up* "satirizes government, politics, celebrity, and media indifference to the current major crises facing the world." (MTD 17) They are clearly mistaken, however, in their claim that *Stanley's Comet* ignores these themes and "merely explores themes of basic human nature." (MTD 18) As Prof. Román pointed out, the Novel "implicates and parodies the government, religion, the media, and nearly every other pillar of society." (FAC, Ex. C 21) Defendants' analysis also completely sidesteps the other thematic similarities identified in Prof. Román's report – including that both works are "direct critiques of capitalism and consumer culture, overt critiques of media narratives, and firm critiques of fame and celebrity." (FAC Ex. C 21-22)

-------------------

[4] By way of example, Prof. Roman highlights that in both works the "scientists are similarly met with tremendous skepticism by nearly anyone who can do something to intervene"; and both works share "scenes with the President of the United States and their staff, with the cohosts of a morning talk show, and with military leaders who are in discussions with international leaders also coming to terms with the comet's arrival"; yet another major plot point both works share is the "efforts to attack and destroy the comet before it collides with the planet… the expression of [which] is very similar in both works and, when considered in combination with other elements, form a cohesive pattern found in both works too"; "Another striking similarity is that in both…[works]… the President of the United States disappears" and both works feature concerts in response to the comet's imminent arrival. (FAC Ex. C 6-14)

PLAINTIFF'S *OPPOSITION* TO NETFLIX'S MOTION TO DISMISS

**Mood/Tone:**  Both Works are **dark comedies** dealing with the impending end of the world – this is a stark departure from the myriad of other such disaster stories, which are all dramas or action adventure, and thereby make the Film and the Novel rather unique. (FAC Ex. C 8)[5] Indeed, Defendants have not identified a single "end of Earth" film which was satirical. The fact that both works selected the **same events** with virtually the **same characters** for comedic purposes makes it extremely unlikely that Defendants did not copy Plaintiff's work.

In attempting to refute the existence of similar tones, Defendants focus their 'mood' analysis on Stanley Caldwell—and specifically his relationship with his mother—arguing that the mood of the Novel is "reflective and sentimental"; whereas "the Film," they claim, "walks the line between being a truly terrifying disaster movie and one long joke, due to its satire and sometimes over-the-top-silliness." (MTD 11) Yet, Prof. Román opines that while both works "can be understood, to a certain degree as dark comedies… they are best understood as social satires…..[in that they] both…depart from the standard disaster movie in unusual and comical ways." (FAC, Ex. C 20) As such, Defendants' splintered focus on one aspect of one character's arc does nothing to discount the alleged and well-documented similarities pervading the tone/mood of both works. Defendants completely ignore Prof. Román's opinion that the "[tone] move[s] from the ironic to the absurd." (FAC, Ex. C 21)

**Setting:**  Here, it is undisputed that there are at least five settings that are unequivocally **identical**: (1) The White House and specifically the oval office, (2) NASA Headquarters, (3) New York City streets, (4) New York City hotel rooms and (5) a morning talk show set. (FAC ¶39) What's more, there are three more settings that are *nearly* identical: (1) a small-town grocery store being looted; (2) a concert attended by a large crowd; and (3) a medium sized college town in a flyover state. (*Id.*) It is

---

[5] Plaintiff is, however, not required to show that his work is unique or novel; only that it is "original", containing a modicum of originality. *Feist*, 499 U.S. at 346.

PLAINTIFF'S *OPPOSITION* TO NETFLIX'S MOTION TO DISMISS

essential to note that even if some of these settings are unprotectable on an individual basis, their selection and arrangement follows a coherent pattern common to both works – requiring a finding of substantial similarity.

Skewing the facts on their face, Defendants simply assert that the "Novel largely takes place in… Baton Rouge, Louisiana." (MTD 30) Actually, the novel was set in three locations - Baton Rouge, New York and Washington.  In fact, all of Dr. Stanley's appearances in the novel were in New York, and all of the appearances of the President and his staff were set in Washington. Further, no mention is made of the ten (10) other shared settings. (FAC ¶39) Defendants argue that the connection drawn in Dr. Roman's report "Between… Baton Rouge… and a handful of scenes in the film that take place in 'smaller mid-west' cities in 'flyover' states [is] overreaching". (MTD 18, fn 11) However, it is worth noting that Dr. Román clearly elaborates on the connection between these settings and why they are significant—notwithstanding evident differences—in the context of each work. (*See* FAC, Ex. C 26)

**Pace**:  Ignoring the fact that in both works the government attempts to use nuclear weapons to destroy the comet, Defendants claim *Stanley's Comet* lacks urgency because "the characters simply wait for the comet to strike." (MTD 18) Conversely, they claim *Don't Look Up* is permeated with urgency because "the main characters constantly run up against the ticking clock as the comet hurtles towards Earth." (MTD 19) But no mention is made of the 'countdown to impact' featured in both works and the fact that in the Novel, the countdown "builds narrative suspense." (FAC, Exhibit C 6) As such, there is a factual disagreement between Plaintiff and Defendants as to whether the "pace for the [n]ovel is quick and episodic…" as Prof. Román opined. (FAC Ex. C 8)

**Characters**:  Defendants falsely claim that "the astronomers in the respective works have nothing in common." (MTD 20) However, two of the astronomer

PLAINTIFF'S *OPPOSITION* TO NETFLIX'S MOTION TO DISMISS

characters, Drs. Stanley and Dr. Mindy, have a great deal in common. First, both Dr. Stanley and Dr. Mindy are "white, middle-aged," "low-level scientist[s]" who "dress in shabby clothes and are somewhat ill groomed." (FAC 14.) Crucially, both allow themselves to be seduced by an orbit of elite, attractive, and powerful people whom they had previously eschewed and to some extent been excluded from. *See Shaw*, 919 F. 2d at 1363 (finding a "glaring example" of "striking similarity" that "belie[d] any claim of literary accident" where two characters were both "well dressed, wealthy… and [had] expensive tastes" along with an "unshakable faith in the satisfactory outcome any difficult situation.")

In addition, each character shares additional unprotectable narrative attributes that taken as a whole constitute a common pattern: (1) Though "it [is] not a standard expectation that the geeky science nerd is going to end up a media celebrity," here—both do. (FAC Ex. C 17) (2) Though it is far less than "standard that the geeky scientist will become a featured guest on a morning talk show," here—both do. *Id*. (3) Finally, even though one would never "expect[]… the same [geeky] scientist" to "emerge as a sex symbol," here—both do. *Id.* As Prof. Román made clear in his report, the "point here is that… the combination of these specific individual character elements create[s] something quite unique" and therefore probative of substantial similarity "especially when they reappear" beat-for-beat in the infringing work. *Id*.

There is no need to examine other, non-leading characters "[b]ecause the similarities between the **principal characters** in both works… point to copying of more than a general theme or plot idea, they support the district court's finding that [the plaintiff] raised a triable issue of fact regarding substantial similarity under the extrinsic test." *Shaw*, 919 F. 2d at 1364.

Additionally, there **are** notable similarities between three additional non-leading characters as well. First, both works feature presidents "who treat the comet as a

disputed factual issue and are even annoyed at the news of it." (FAC15) Most notably, even in the face of total and imminent annihilation each is focused on polling and popularity. (*Id.*) Further, "both works feature women who seduce the main astronomer." (*Id.*) Minor differences aside, each shares a defining feature that drives them both in the same way: where they would usually find Drs. Stanley and Mindy "unsexy," the fact that these men discovered the comet, which will ultimately kill everyone on the face of the planet, renders them "now irresistible to these women." (FAC Ex. C 21) Finally, Defendants are wrong in claiming the film has no parallel or "analogue to Stanley Caldwell, the main character of the Novel." (MTD 13) As Prof. Román opined in his Report, '[t]he main character in *Don't Look Up* in many ways is a combination of the two Stanley's in *Stanley's Comet*." (FAC Ex. C 16)

Defendants' reliance on *Milano v. NBC Universal, Inc.*, falls flat. 584 F. Supp. 2d 1288, 1297 (C.D. Cal. 2008); (MTD 13) In *Milano*, the Court was comparing a reality show treatment to NBC's *The Biggest Loser*.  Given the nature of reality shows, the characters in particular were "stock characters" such as a "firefighter…who is overweight, and a scorned wife who, after gaining weight, lost her husband to a younger, slimmer woman" which do not describe any "particular participant who will compete on the program because reality shows [by their very nature] do not involve fictional characters." *Id*. at 1297.  Here, of course, Plaintiff's Novel contained fictional characters who appear to have been appropriated.

**Sequence of Events:**  Defendants claim that the "sequences of events could not differ more." (MTD 22) Curiously, they fail to include many elements which they unilaterally deem unprotectable in their analysis.  Rather, they insist that "Dr. Stanley's story is a separate subplot of the novel." (MTD 17, 21) As the Ninth Circuit has repeatedly made clear, "[e]ven if a copied portion be relatively small in proportion to the entire work, if qualitatively important, the finder of fact may properly find substantial

- 19 -

similarity." *Hanagami*, 85 F. 4th at 944.  Here, when we take into account Dr. Stanley's so-called-subplot, Plaintiff has plausibly alleged approximately 24 similar events in a near identical order. (FAC 11-13) Again, other than their "spin" on the similarities, it is unclear whether Defendants have effectively negated any of the similarities identified by Plaintiff. [6]

**Dialogue:**  Defendant is simply wrong when asserting that "extended dialogue is needed to support a claim of substantial similarity." *Olson v Nat'l Broad. Co*., 855 F.2d 1446 (99th Cir. 1988); (MTD 12) That is not a holding from *Olson* - or any court for that matter. *Id.* Indeed, in *Olson*, the court examined all relevant factors for substantial similarity and held that there is "little similarity between "The A-Team" and the "Cargo" works in terms of overall plot, sequence, dialogue or setting." *Id*. at 1450.

## C. PLAINTIFF HAS SUFFICIENTLY ALLEGED A CLAIM FOR BREACH OF IMPLIED-IN-FACT CONTRACT

While it is true that to survive a motion to dismiss an idea theft claim under Rule 12(b)(6), "there must be 'substantial similarity' between plaintiff's idea and defendant's production to render defendant liable", the threshold for substantial similarity is lower for idea theft claims than it is for copyright infringement claims. Nimmer & Nimmer, *supra*, § 19D.08[A]; *See also Benay v. Warner Bros. Entm't, Inc.* 607 F.3d 620, 631 (9th Cir. 2010) (from the invocation of the copyright term 'substantial similarity' it does not follow . . . that plaintiffs in idea-submission cases must prove substantial similarity of *copyright-protected* elements. *Id*.) Plaintiff has, in his FAC, the exhibits thereto, (and in this opposition) already established he has plausibly alleged substantial similarity; the only difference is that nothing is required to be "protectable" when analyzing same in the idea theft context.

---

[6] The similarities are not random; they form a cohesive pattern of elements tied together by common plots and themes. *Shaw*, 919 F.2d at 1358-1360.

PLAINTIFF'S *OPPOSITION* TO NETFLIX'S MOTION TO DISMISS

The cases Defendants rely on in postulating that there is insufficient similarity for idea theft are distinguishable.  In *Ryder v. Lightstorm Entm't, Inc*., the court took it upon itself to filter out numerous elements (even though there is no requirement that any element be "protectable"), and then declined to find substantial similarity as a matter of law where there were twelve (12) similarities after filtration; of those 12, the court found they were too trivial or commonplace to support a finding of substantial similarity. 246 Cal.App.4th 1064 (2016). Here, the similarities are far more significant. *See, e.g.*, *Donahue v. Ziv Television Programs, Inc.*, 245 Cal. App. 2d 593, 601 (1966) (holding "there are enough similarities in basic plot ideas, themes, sequences and dramatic 'gimmicks' that a jury might well have thought that plaintiffs' format and outlines had been submitted to [defendant] ….. and that it was their format which was the inspiration for "Sea Hunt," rather than Tors' alleged original idea.")

Further, in *Norman v. Ross*, the court did not find the works substantially similar because the Court filtered out alleged "similarities" which pre-dated defendant's access to the plaintiff's work. 101 Cal. App. 5th 617 (2024). Here, of course, the Defendant had access to Plaintiff's Novel in 2007. (FAC ¶¶12-15) This was long before McKay allegedly wrote the Film in 2019. (FAC ¶43) Therefore, there are no "preexisting" elements to filter out.

In terms of "dramatic gimmicks", Defendants own attempt to split hairs over minor differences actually emphasizes just how similar the works are. For example, Defendants try to claim the Novel does not have the same "dramatic gimmick" as the Film since the Novel's countdown is over the course of a week while the Film's countdown takes place over six (6) months. (MTD 19-20) That is a distinction without a difference – of course each countdown is a dramatic gimmick – no matter the way the time is calculated.  Further, Defendants claimed the countdown is *scènes à faire* – then switch gears claiming it is a dramatic gimmick unique to their work.  Yet the

- 21 -

presence of the countdown in both is an important similarity establishing substantial similarity.

The Defendants also argue that the Novel switches between points of view which differs from that of the Film. However, this is yet another red herring; there are numerous different points of view between characters in the Film (i.e. between the main characters then shifting to the President and her staff without astronomers present).  While the two Works are not identical, and there are some 'dissimilarities', those are to be disregarded by the Court and nevertheless pale in comparison to the striking similarities identified by Plaintiff's expert.

### D. PLAINTIFF'S IDEA THEFT CLAIM IS TIMELY

Defendants intentionally misquote the applicable law on point in making a somewhat tenuous argument that that Plaintiff's idea theft claim is barred by the statute of limitations. California courts generally assume that the accrual date for such claims is the date on which the work is released to the **general public**..." as the public release would destroy any further marketability (emphasis added). *Benay*, 607 F.3d at 633; *see also Blaustein v. Burton* (1970) 9 Cal.App.3d 161, 186 ("[I]mplied promise to pay arose upon respondents' disclosure of the idea to a substantial segment of the public since such use would tend to destroy any further marketability of the idea."). Further, in *Donahue v. United Artists Corp.*, the court  held that "the private auditioning of a film to national advertising agencies" did not compare with "the exhibition of the idea to 'a substantial segment of the public in two metropolitan centers in this state,' and therefore did not cause the statute of limitations to start running. 2 Cal. App. 3d 794, 802 (1969). The court held that the cause of action accrued at the later time, when the idea was exhibited to a "substantial segment of the public." *Id*.

PLAINTIFF'S *OPPOSITION* TO NETFLIX'S MOTION TO DISMISS

Here, Defendants seek to impose the date of December 5, 2021, when the film had a private, celebrity-studded, red-carpet premiere at Lincoln Center in New York City (during the Covid-19 pandemic no less) to start the statute of limitations. (MTD 2, fn 3) It goes without saying that Plaintiff was not invited to the premiere; and this was not a release to the "general public" by any means.  However, the work did have a _limited_ theatrical release on December 10, 2021. (FAC ¶20) Furthermore, it was released to the **general public** via Netflix on December 24, 2021. (FAC, ¶20) Because the December 5, 2021, premiere was not open to the general public, the earliest date by which the statute of limitations accrued was December 10, 2021. The implied-in-fact contract claim carries a two-year statute of limitations. *See Blaustein*, 9 Cal. App. 3d at 185 (two year statute of limitations for implied-in-fact contract claims, under Cal. Civ. Code §339). Plaintiff filed this action on December 6, 2023. [7]

III.    **CONCLUSION**

For the foregoing reasons, Plaintiff requests this Court deny Defendants' Motion to Dismiss the Copyright Infringement and Idea Theft claims as a matter of law.

Respectfully submitted,

Dated: June 12, 2024                    **LOWE & ASSOCIATES, PC**


By: */s/ Aleksandra Hilvert*

Steven T. Lowe, Esq.
Aleksandra Hilvert, Esq.
Vikram Amritraj, Esq.

---

[7] Although Plaintiff disagrees that December 5, 2023 is the actual accrual date, Plaintiff actually attempted to file this case on December 5, 2023, which is the subject of a pending motion with the Court. Dkt. 29.

PLAINTIFF'S *OPPOSITION* TO NETFLIX'S MOTION TO DISMISS

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for PLAINTIFF WILLIAM COLLIER, certifies that this Memorandum of Points and Authorities contains <u>6,956</u> words and does not exceed 25 pages, which complies with the word limit of L.R. 11-6.1 and the Court's Standing Order dated October 24, 2023.

Respectfully,

Dated: June 12, 2024                    **LOWE & ASSOCIATES, PC**

By: */s/ Aleksandra Hilvert*
   Steven T. Lowe, Esq.
   Aleksandra Hilvert, Esq.
   Vikram Amritraj, Esq.

– 24 –