UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM COLLIER, an Individual,<br><br>                  Plaintiff,<br><br>   v.<br><br>ADAM MCKAY, an Individual; NETFLIX, INC. a Delaware corporation; DAVID SIROTA, an Individual; HYPEROBJECT PRODUCTIONS, a Delaware limited liability company; and DOES 1–50, inclusive,<br><br>                  Defendants. | Case No. 2:23-cv-10227-SPG-DFM<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO COMPUTE OR EXTEND TIME COMPLAINT WAS FILED AND GRANTING DEFENDANTS' MOTION TO DISMISS**<br>**[ECF NOS. 29, 31]** |

Before the Court is Plaintiff William Collier's ("Plaintiff") Motion to Compute or Extend Time Complaint Was Filed Pursuant to Fed. R. Civ. P. 6(a)(3) and/or 6(b)(1)(B), or, in the Alternative, Plaintiff's Application to Deem Complaint Filed as of December 5, 2023[,] Pursuant to Local Rule 5-4.6.2. (ECF No. 29 ("Application")). Also before the Court is Defendants Adam McKay ("McKay"), Netflix, Inc. ("Netflix"), David Sirota ("Sirota"), and Hyperobject Productions' ("Hyperobject," and, collectively, "Defendants") Motion to Dismiss Plaintiff's First Amended Complaint, In Its Entirety, Pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 31 ("Motion")). Having

considered the parties' submissions, oral arguments, the relevant law, and the record in this case, the Court DENIES Plaintiff's Application as premature and GRANTS the Motion.

## I. BACKGROUND

### A. Factual Background

In approximately 2004, Plaintiff, over a span of around six months, authored a short novel entitled *Stanley's Comet*. (ECF No. 26 (First Amended Complaint ("FAC") ¶ 5(a)[1]). Plaintiff describes *Stanley's Comet* as a "dark comedy" in which a "low-level NASA scientist" named Dr. Hershel Stanley discovers a "giant comet on a collision course" with Earth.[2] (*Id.*). The book takes place over a span of seven days and focuses on two main characters: the aforementioned Dr. Stanley, who embarks on a media tour to publicize his discovery, and a single, thirty-four-year-old man named Stanley Caldwell who works at a copy store and lives at home with his mother in Baton Rouge, Louisiana. (*Id.* ¶¶ 34–35); W.H. Collier, *In Extremis: Two Novels*, 6, 13 (2012). Over the course of the work, the public grapples with the news of an impending comet, with many initially "unbothered." (FAC ¶ 37). As the predicted collision nears, however, "mayhem ensues," (*id.*), including the President of the United States committing suicide on the fourth day before impact and, in Baton Rouge, looting and partying on the third and second days before impact, respectively, W.H. Collier, *In Extremis: Two Novels*, 35–38, 66–70, 83–85 (2012). At the

---

[1] Plaintiff's FAC erroneously includes two paragraphs numbered five. (FAC at 2–3). For ease of reference, the Court refers to the second paragraph numbered five as "paragraph 5(a)."

[2] Defendants request the Court take judicial notice of their film *Don't Look Up* as well as Plaintiff's book. (ECF No. 31-5). Plaintiff does not oppose. It is appropriate to take judicial notice of a document "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Plaintiff refers extensively to both works through the course of his Complaint, as they form the basis of his claims. *See generally* (FAC). The Court has read *Stanley's Comet* and watched *Don't Look Up* in their entireties and warns the reader of spoilers ahead.

end of the book, the comet fails to collide with the Earth and life continues on as normal. (FAC ¶ 34).

In 2007, Plaintiff's daughter worked as an executive assistant in the entertainment industry. (*Id.* ¶ 7(a)[3]). Her manager reported to an individual who managed and frequently collaborated with McKay. (*Id.* ¶¶ 7(a)–9). In July 2007, at his daughter's request, Plaintiff sent his daughter a copy of *Stanley's Comet* to be considered by her employer as a literary submission for potential development. (*Id.* ¶¶ 10, 12). Plaintiff alleges at least one of various individuals reviewed *Stanley's Comet* on behalf of his daughter's employer and of McKay, who was a client of her employer. (*Id.* ¶ 13). Later, in 2012, Plaintiff self-published *Stanley's Comet* in his book *In Extremis: Two Novels*; the work has been available for purchase from retailers including Barnes & Noble and Amazon since that time. (*Id.* ¶ 19).

According to McKay, McKay wrote the screenplay for the movie *Don't Look Up* in 2019. (*Id.* ¶ 43). McKay has cited various sources of inspiration for the film, including a conversation he had with Sirota regarding climate change and other media on that same topic. (*Id.* ¶¶ 44–47). *Don't Look Up* begins with graduate student Kate Dibiasky's discovery of a comet that she and her advisor, Dr. Randall Mindy, determine will hit Earth in approximately six months and fourteen days. *Don't Look Up* (Netflix 2021). After being rebuffed by the White House, they decide to leak the news via a news article and a simultaneous television appearance. *Id.* The public, however, is more interested in the graduate student's meltdown on live television, and the scientists find themselves largely ostracized until the President decides focusing on the comet would be a politically expedient way to distract from her various missteps. *Id.* World leaders waste several opportunities to divert or destroy the comet, which hits Earth at the end of the film, apparently killing the graduate student, her professor, and most life on Earth. *Id.* Various individuals, including the President, escape Earth on a cryogenic spaceship but disembark,

---

[3] Plaintiff's FAC also erroneously includes two paragraphs numbered seven. (FAC at 2–4). The Court refers to the second paragraph numbered seven as "paragraph 7(a)."

naked, on a planet inhabited by murderous, bird-like aliens that kill the President nearly immediately. *Id.* After its December 5, 2021, premiere,[4] *Don't Look Up* had a limited theatrical release on December 10, 2021, and began streaming on Netflix on December 24, 2021. (FAC ¶ 20).

In September 2022, after the release of *Don't Look Up*, Plaintiff applied for copyright registration of *Stanley's Comet*, and the registration became effective on October 18, 2022. (ECF No. 26-1 at 2–3).

### B. Procedural History

Counsel for Plaintiff represent that they began attempting to file Plaintiff's initial complaint at approximately 7:15 p.m. on December 5, 2023, but were unable to do so because the CM/ECF online payment portal would not load. (ECF No. 29-1 (Declaration of Aleksandra Hilvert) ¶¶ 3–4; ECF No. 29-2 (Declaration of Victoria E. Mulvey) ¶ 4). At no point during the time in which Plaintiff's counsel attempted to file the complaint did a "Notice of CM/ECF Unavailability" appear on the website. (Hilvert Decl. ¶ 5; Mulvey Decl. ¶ 16). The docket reflects that, on December 6, 2023, Plaintiff initiated this action in federal court. (ECF No. 2). Plaintiff filed the FAC on April 8, 2024. (FAC).

On May 1, 2024, Plaintiff filed the Application, requesting the Court deem this lawsuit filed as of December 5, 2023. (Appl. at 4). Defendants opposed on May 8, 2024, ("Defs.' Opp."), and Plaintiff replied in support of the Application on May 15, 2024, (Pl.'s Reply). Separately, Defendants moved to dismiss on May 13, 2024. (Mot.). Plaintiff opposed on June 12, 2024, (ECF No. 34 (Plaintiff's Opposition to Motion ("Pl.'s Opp."))), and Defendants replied in support of the Motion on June 28, 2024, (ECF No. 35 (Defendants' Reply in Support of Motion ("Defs.' Reply"))).[5]

---

[4] Defendants note and Plaintiff does not dispute that *Don't Look Up* had a New York City premiere on December 5, 2021. (ECF No. 30 (Defendants' Opposition to Application ("Defs.' Opp.")) at 2 n.1; ECF No. 32 (Plaintiff's Reply in Support of Application ("Pl.'s Reply")) at 5–6). The Court takes judicial notice of this event.

[5] Plaintiff subsequently filed objections to Defendants' Reply, complaining that Defendants had raised new arguments and caselaw. (ECF No. 36 ("Plaintiff's Objections")).

## II. LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). To survive a 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks and citation omitted).

When ruling on a Rule 12(b)(6) motion, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice," nor must it accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Seven Arts Filmed Ent., Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (internal quotation marks and citation omitted). Where dismissal is appropriate, a

---

Plaintiff's Objections are not well taken. As Defendants note in response, moving parties are permitted to file reply memoranda both to support their own motion and to rebut arguments made in the non-moving party's opposition, if any. (ECF No. 37 at 2). *See also* C.D. Cal. L.R. 7-10 (allowing for "a reply memorandum" as well as "declarations or other rebuttal evidence"). To the extent Plaintiff seeks permission to file a sur-reply by way of his Objections, this request is DENIED.

court should grant leave to amend unless the plaintiff could not possibly cure the defects of the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

## III. DISCUSSION

### A. Whether Plaintiff States a Claim for Copyright Infringement

To state a claim for copyright infringement, a plaintiff must plead two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns., Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). "Copying may be established by showing that the infringer had access to plaintiff's copyrighted work and that the works at issue are substantially similar in their protected elements." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002). Put differently, "[t]he second prong of the infringement analysis contains two separate components: 'copying' and 'unlawful appropriation.'" *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin* ("*Skidmore*"), 952 F.3d 1051, 1064 (9th Cir. 2020) (citation omitted). Defendants move to dismiss Plaintiff's First Cause of Action for copyright infringement on the grounds that Plaintiff has failed to establish substantial similarity between his novel and *Don't Look Up*; for the purposes of this Motion, they do not dispute Plaintiff's allegations as to ownership (the first element of a copyright claim) or access (a subpart of the second element). (Mot. at 14–15). For the reasons explained below, the Court DISMISSES this claim.

#### 1. Establishing Unlawful Appropriation Through Substantial Similarity

"[T]he hallmark of 'unlawful appropriation' is that the works share *substantial* similarities." *Skidmore*, 952 F.3d at 1064. To evaluate "whether two works are substantially similar," courts in the Ninth Circuit "employ a two-part analysis" consisting of "an extrinsic test and an intrinsic test." *Cavalier*, 297 F.3d at 822. "The extrinsic test is an objective test based on specific expressive elements" that examine whether the plaintiff has identified "articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in two works." *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994) (internal quotation marks and

citation omitted). *See also Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir. 1984) ("The extrinsic test requires a comparison of plot, theme, dialogue, mood, setting, pace and sequence."). The intrinsic test, in contrast, "is a subjective comparison that focuses on whether the ordinary, reasonable audience would find the works substantially similar" in their "total concept and feel." *Cavalier*, 297 F.3d at 822 (internal quotation marks and citation omitted). *See also Litchfield*, 736 F.2d at 1352 (holding that the intrinsic test "focuses on the response of the ordinary reasonable person to the works" (internal quotation marks and citation omitted)).

Because "[c]opyright law only protects expression of ideas, not the ideas themselves," courts "must take care to inquire only" as to "whether the *protectible elements, standing alone,* are substantially similar." *Cavalier*, 297 F.3d at 822–23 (internal quotation marks and citation omitted) (emphasis in original). "It is well established that, as a matter of law, certain forms of literary expression are not protected against copying." *Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985). *See also* 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea, . . . concept, [or] principle, . . . regardless of the form in which it is described, explained, illustrated, or embodied in such work."). For example, copyright law does not protect "the general idea for a story," nor does it prohibit the copying of "situations and incidents which flow naturally from a basic plot premise, so-called scenes a faire." *Berkic*, 761 F.2d at 1293. *See also Jason v. Fonda*, 526 F. Supp. 774, 777 (C.D. Cal. 1981) (granting motion to dismiss on grounds that similarity was "insubstantial as a matter of law" where works merely shared "unprotectable ideas" such as general "subjects such as morality" and "sequences which necessarily follow from a common theme (scenes a faire)"), *aff'd*, 698 F.2d 966 (9th Cir. 1982).

In certain circumstances, however, "a copyright plaintiff may argue infringement based on original selection and arrangement of unprotected elements." *Skidmore*, 952 F.3d at 1074 (internal quotation marks, citation, and alteration omitted). "[A] combination of unprotectable elements is eligible for copyright protection only if those elements are

numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003). Put simply, "the selection and arrangement must itself be original to merit copyright protection." *Skidmore*, 952 F.3d at 1074. *See also Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir. 2002) ("Each note in a scale . . . is not protectable, but a pattern of notes in a tune may earn copyright protection."), *overruled on other grounds by Skidmore*, 952 F.3d 1051 (9th Cir. 2020); *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 849 (9th Cir. 2012), *as amended on denial of reh'g and reh'g en banc* (June 13, 2012) (holding that "[o]riginal selection, coordination, and arrangement of unprotectible elements may be protectible expression").

### 2. Analysis

Here, Defendants contend that Plaintiff impermissibly seeks to allege copyright infringement for generic and unprotectable ideas, argue that the FAC "often mischaracterize[s] the works," and conclude that Plaintiff has merely "concoct[ed] a list of random similarities" rather than pleading substantial similarity. (Mot. at 22–23). Plaintiff argues that he has adequately alleged common elements between the works sufficient to satisfy the selection and arrangement test. (Pl.'s Opp. at 18). The Court conducts a holistic analysis of Plaintiff's pleadings to determine whether he has alleged substantial similarity.

#### a) Mood and Tone

Plaintiff alleges that each work has the following tones or moods: comedic suspense, political satire, irony, dark comedy, and farce. (FAC ¶ 33). Although Defendants dispute Plaintiff's characterization of *Stanley's Comet*, contending the work is instead "reflective and sentimental," (Mot. at 18), the Court notes that this allegation is not plainly contradicted by the work itself and declines to engage in any subjective analysis concerning whether Plaintiff's book is comedic or satirical. *See also Manzarek*, 519 F.3d at 1031 (Courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."). In any event, "[a] general mood that flows 'naturally from unprotectable basic plot premises' is not entitled to protection."

*Shame on You Prods., Inc. v. Elizabeth Banks*, 120 F. Supp. 3d 1123, 1158 (C.D. Cal. 2015) (quoting *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1177 (9th Cir. 2003)), *aff'd sub nom. Shame on You Prods., Inc. v. Banks*, 690 F. App'x 519 (9th Cir. 2017). *See also Rice*, 330 F.3d at 1177 (holding that moods of secrecy and mystery were "generic" and indistinct from the unprotectable "idea of revealing magic tricks"), *overruled on other grounds by Skidmore*, 952 F.3d 1051 (9th Cir. 2020); *Yonay v. Paramount Pictures Corp.*, No. CV 22-3846 PA (GJSX), 2024 WL 2107721, at *7 (C.D. Cal. Apr. 5, 2024) (describing moods such as "the constant threat of death" and "tranquility and violence" as "general, unprotected," and "flow[ing] naturally from the basic plot premise"). A comedic, farcical, ironic, or satirical mood is far too general to merit copyright protection.

### b) Themes

Plaintiff alleges that the works each critique the media, the government, the cultural elite, human nature, and society, and that they share common themes including science as a political issue, apathy, and mob mentalities with "greed" as the "immediate reaction." (FAC ¶ 36). Defendants contend that the works do not share common themes but that, in any event, Plaintiff has alleged merely the existence of unprotected stock themes. (Mot. at 17–18). The Court agrees with Defendants that the generic, high-level themes identified in the FAC are "among the very staples of modern American literature and film" and cannot serve as the basis for copyright protection. *Berkic*, 761 F.2d at 1294. *See also id.* (denying copyright protections for the themes of "the small miseries of domestic life, romantic frolics at the beach, and conflicts between ambitious young people on one hand, and conservative or evil bureaucracies on the other"); *Yonay*, 2024 WL 2107721, at *7 (describing "the bonds that form in military service," "the sheer love of flying," and "true grit" as "unprotected stock themes").

### c) Pace

Plaintiff contends that each work "slowly build[s] to a climax . . . by using elapsed time to impact" and that "craziness and hysteria" builds as the comet approaches Earth. (FAC ¶ 34). Defendants dispute that the works have similar paces, contending both that

the works take place over different spans of time—seven days for *Stanley's Comet* and over six months for *Don't Look Up*—and that they greatly differ in "sense of urgency." (Mot. at 18–19). In opposition, Plaintiff alleges that Defendants incorrectly characterize his work and that the chapter-by-chapter countdown "builds narrative suspense." (Pl.'s Opp. at 23). Plaintiff also points the Court to an evaluation of *Stanley's Comet* attached to the FAC that describes his book as "quick and episodic." (*Id.*). Consistent with the standard of review for a motion to dismiss, the Court declines to wade into any dispute over the works' pacing. The Court notes, however, that pacing alone is highly unlikely to serve as the basis for a copyright claim and that here, the FAC fails to allege any infringement of specific, *original* elements of *Stanley's Comet*'s pacing—many works "slowly build to a climax" and use "narrative suspense" as storytelling devices.

    d)  *Characters, Plot, and Sequence of Events*

  The FAC emphasizes that each work features "a low-level scientist . . . about the same age" and with "the same personality." (FAC ¶ 38(a)). As an initial matter, Plaintiff's claim that Dr. Stanley and Dr. Mindy have "the same personality" is contradicted by the works themselves. Dr. Stanley is "embittered" and so obsessed with his work that he has never had a serious relationship with anyone; he dismisses the idea of dating as "nonsense." (*Id.*); W.H. Collier, *In Extremis: Two Novels*, 49 (2012). He expresses satisfaction that the comet will hit the Earth and kill those who he holds grudges against, such as a former bully and his high school principal. W.H. Collier, *In Extremis: Two Novels*, 48 (2012). Dr. Mindy, in contrast, is mild-mannered, married with a wife and two adult children, and becomes increasingly distraught at the impending impact. *Don't Look Up* (Netflix 2021). Plaintiff also stresses that the astronomers share similar appearances and racial identities, (FAC ¶ 38(a)), but the fact that Drs. Stanley and Mindy are each introduced to the audience as disheveled, middle-aged white men does not suffice to establish substantial similarity without more; the characters each fit in the stereotypical mold of a scientist (or, less generously, a nerd).

The FAC also claims that the Presidents in each work are similar because of their "inefficient" and "annoyed" response to the comet. (*Id.* ¶ 38(c)). Although both the book and the film have a President, the Court observes many dissimilarities between them. *Stanley's Comet*'s President Jennings is a "barrel-chested and robust" short man who abruptly commits suicide two days after learning of the comet and does not meet either Dr. Stanley or Caldwell. W.H. Collier, *In Extremis: Two Novels*, 14, 35–37 (2012). In contrast, *Don't Look Up*'s President Orleans is a bombastic former Playboy model who interacts extensively with Dr. Mindy and Dibiasky over the course of the movie; she ultimately decides to capitalize on the comet to distract from news that she sent pictures of her genitals to her uniquely unqualified Supreme Court nominee. *Don't Look Up* (Netflix 2021).

Plaintiff also seeks relief on the basis that, in both works, women "forcefully push past infidelity" to "seduce the main astronomer." (FAC ¶ 38(d)). The FAC erroneously describes the Cinnamon character in *Stanley's Comet* as a "starlet," (FAC ¶ 5(a)); she is in fact the wife of a successful actor who appears to be a crude caricature of Leonardo DiCaprio, W.H. Collier, *In Extremis: Two Novels*, 44–49 (2012) (introducing character of "Donetello D'Angelo," Cinnamon's husband, as actor who starred in movie about "the Lusitania"). In contrast, Dr. Mindy's love interest in *Don't Look Up* is Brie Evantee, a successful television host; it is Dr. Mindy who is the married character. *Don't Look Up* (Netflix 2021). Additionally, and unlike in *Don't Look Up*, Dr. Stanley and Cinnamon fail to consummate their affair because Dr. Stanley falls asleep. W.H. Collier, *In Extremis: Two Novels*, 49 (2012).

In addition to these discrete matters, Plaintiff alleges that, at a high level of generality, the works have similar plots: low-level scientists discover large comets predicted to collide with the Earth; appear on talk shows to inform the public of their findings, with initial public apathy; and the works culminate in "mayhem" as the comets becomes visible from Earth. (FAC ¶ 37). Plaintiff also emphasizes a split between people who believe that the comet will hit the Earth and those who do not, and that the comet

1  reaches Earth's orbit near the end of both works. (*Id.* ¶ 34). Importantly, however, the
2  comet in *Don't Look Up* actually hits the Earth, causing an apparently extinction-level
3  event, while the titular comet in *Stanley's Comet* "skipped off" the Earth's atmosphere, and
4  all survive (except the President, who was already dead). W.H. Collier, *In Extremis: Two*
5  *Novels*, 109 (2012).

6  "[T]his degree of similarity between the basic plots of two works cannot sustain a
7  plaintiff's claim that the works are 'substantially similar.'" *Berkic*, 761 F.2d at 1293.
8  Instead, as currently pleaded, Plaintiff has merely identified *scenes a faire* that flow from
9  the concept of an impending comet strike on the Earth. The discovery of the comet and
10 reactions from the public and various government actors, including impulsive behavior,
11 apathy, and fear, are all "situations and incidents which flow naturally" from the basic
12 premise of each work. *Berkic*, 761 F.2d at 1293. *See also Shame on You Prods.*, 120 F.
13 Supp. 3d at 1151 (concluding that "[g]etting drunk, spending a 'one-nighter' with someone
14 you just met, waking up disoriented the next morning at the individual's house or
15 apartment, and putting on the clothes worn the night before are . . . plot devices that are
16 necessary to a walk of shame" and thus "not protectable"); *Yonay*, 2024 WL 2107721, at *7
17 (holding that "general plot ideas" such as "fighter pilots training and embarking on
18 missions" are not protected under copyright law); *Williams v. Crichton*, 84 F.3d 581, 589
19 (2d Cir. 1996) ("[E]lectrified fences, automated tours, dinosaur nurseries, and uniformed
20 workers . . . are classic *scenes a faire* that flow from the uncopyrightable concept of a
21 dinosaur zoo.").

22              e)    *Settings*

23 The FAC contains a list of purported common settings, including "Earth generally"
24 as well as more specific examples of locations on Earth, including New York City, the
25 Oval Office, the set of a television show, and a "grocery store." (FAC ¶ 39). Defendants
26 contend that the works' settings "differ completely," with *Stanley's Comet* taking place
27 primarily in Baton Rouge, Louisiana. (Mot. at 26). In opposition, Plaintiff identifies
28 certain settings he contends are either "identical" or "nearly identical." (Opp. at 22

1  (emphasis omitted)). The setting of "Earth generally" certainly cannot serve as a basis for copyright protection. The Court concludes that the "identical settings" identified by Plaintiff—the Oval Office, NASA Headquarters, and locations in New York City—lack any special originality and serve as the backdrop for many, many works. As for the "nearly identical" locations, although Dr. Mindy and Dibiasky go grocery shopping near the end of the film, the Court did not observe any looting during that scene, let alone the violence described at Calando's in *Stanley's Comet*; the stadium concert depicted in *Don't Look Up* is highly dissimilar from the "makeshift stage" and naked dancing in the novel; and the Court cannot discern what "medium sized college town in a flyover state," if any, is depicted in *Stanley's Comet*.

                *f)*    *Dialogue*

In addition to describing overarching dialogue themes, Plaintiff identifies as allegedly common phrases "Don't look up," "Don't look," and characters saying, "Oh shit" after first seeing the comet. (FAC ¶ 40). Under Ninth Circuit caselaw, "extended similarity of dialogue [is] needed to support a claim of substantial similarity." *Olson v. Nat'l Broad. Co.*, 855 F.2d 1446, 1450 (9th Cir. 1988). Additionally, "[o]rdinary phrases are not entitled to copyright protection." *Narell v. Freeman*, 872 F.2d 907, 911 (9th Cir. 1989). Instead, to merit copyright protection, expressions must be "highly original." *Id. See, e.g.*, *Salinger v. Random House, Inc.*, 811 F.2d 90, 93 n.2, 98 (2d Cir.) (concluding phrases such as "Chaplin squatting grey and nude, atop his chiffonier, swinging his thyroid around his head by his bamboo cane, like a dead rat" constituted "sequence[s] of creative expression" entitled to copyright protection), *opinion supplemented on denial of reh'g*, 818 F.2d 252 (2d Cir. 1987). Here, not only does the dialogue lack extended similarity—an issue Plaintiff does not dispute—but the specific phrases identified by Plaintiff "are commonly-used expressions" not entitled to copyright protection. *Narell*, 872 F.2d at 911 (9th Cir. 1989).

       *g)*  *Selection and Arrangement of Elements*

A plaintiff may "satisfy the extrinsic test" by pleading "the presence of . . . many generic similarities and the common patterns in which they arise." *Metcalf*, 294 F.3d at 1074. In *Metcalf*, for example, the Ninth Circuit reversed the district court's grant of summary judgment based on "similarities between the relevant works" that were not just substantial but "striking," including their settings, "overburdened county hospitals in inner-city Los Angeles with mostly black staffs"; main characters, "young, good-looking, muscular black surgeons who grew up in the neighborhood where the hospital is located"; and plot points, including romantic relationships with women "in their thirties, . . . once married but . . . now single, without children and devoted to their careers" in the hospitals in which they and the main characters worked and the hospitals' bids for reaccreditation being "vehemently opposed by a Hispanic politician."[6] *Id.* at 1073–74. In the context of fabric design, the Ninth Circuit has held that, although "[t]he idea of a floral pattern depicting bouquets and branches is not protectible," an "original selection, coordination, and arrangement of such elements *is* protectible" and can be pleaded by reference to "objective similarities in protectible elements," such as visual art used in the patterns as well as the patterns' "spatial combinations," "scale and layout," and color arrangements. *L.A. Printex Indus.*, 676 F.3d at 850–51 (emphasis added).

  Here, although the works share some common elements, as currently set forth in the FAC, Plaintiff has not met his burden to allege that the selection and arrangement of those elements are substantially similar. Although Plaintiff urges the Court to focus on the number of similar elements he has identified, contending that as few as six articulable similarities can suffice to state a claim, (Pl.'s Opp. at 19), establishing substantial similarity

---

[6] Although, in *Skidmore*, the Ninth Circuit expressly invalidated the "inverse ratio rule" tacitly applied by the Ninth Circuit in *Metcalf*, it favorably quoted *Metcalf*'s characterization of the copyright protections afforded to a plaintiff claiming original selection and arrangement. *Skidmore*, 952 F.3d at 1074–75. Thus, *Metcalf* remains good authority as to copyright protection of original selection and arrangement of otherwise unprotected elements.

is not a numbers game. Instead, a plaintiff must identify "concrete similarities" between the works. *Fleener v. Trinity Broad. Network*, 203 F. Supp. 2d 1142, 1145 (C.D. Cal. 2001). A "compilation of random similarities scattered throughout the works" does not suffice. *Kouf*, 16 F.3d at 1045 (internal quotation marks and citation omitted). *See also Litchfield*, 736 F.2d at 1356.

### B. Whether Plaintiff's Implied Contract Claim is Time-Barred

Defendant contends that Plaintiff's Second Cause of Action, his claim for breach of an implied-in-fact agreement, is barred by California's two-year statute of limitations. (Mot. at 28). Although affirmative defenses may not ordinarily be raised in a motion to dismiss, the Ninth Circuit recognizes an exception to this general rule where "the defense raises no disputed issues of fact." *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984). "[A] complaint may be dismissed when the allegations of the complaint give rise to an affirmative defense that clearly appears on the face of the pleading." *Boquist v. Courtney*, 32 F.4th 764, 774 (9th Cir. 2022). Dismissal is appropriate, however, "[o]nly when the plaintiff pleads itself out of court" by "admit[ting] all the ingredients of an impenetrable defense." *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 604 n.8 (9th Cir. 2018) (citation omitted).

California Code of Civil Procedure § 339 imposes a two-year statute of limitations for any contractual claims that accrues upon "the discovery of the loss or damage suffered by the aggrieved party." Cal. Civ. Proc. Code § 339(1). An action "for breach of an implied contract not to exploit an idea without paying for it" accrues upon "the sale or exploitation of the idea." *Davies v. Krasna*, 14 Cal. 3d 502, 511–12 (1975). The plaintiff's awareness is generally not a determining factor: "a cause of action for breach of contract ordinarily accrues at the time of breach even though the injured party is unaware of his right to sue." *Donahue v. United Artists Corp.*, 2 Cal. App. 3d 794, 802 (1969). Instead, typically, accrual occurs on "the date on which the work is released to the general public." *Benay v. Warner Bros. Ent.*, 607 F.3d 620, 633 (9th Cir. 2010), *overruled on other grounds by Skidmore*, 952 F.3d 1051 (9th Cir. 2020). Because "the parties generally will not have

-15-

defined the actionable use triggering the defendant's obligation to pay" in implied-in-fact contracts, however, courts are reluctant to impose bright-line rules in determining the date of accrual. *Benay v. Warner Bros. Ent.*, No. CV 05-8508 PSG (FMOx), 2012 WL 13071728, at *9 (C.D. Cal. Feb. 14, 2012).

In *Thompson v. California Brewing Company*, for example, the California Court of Appeal concluded that the statute of limitations began to run at the time the defendant allegedly used the plaintiff's idea by "rather extensively" running "test" advertising in several local markets. 191 Cal. App. 2d 506, 509 (1961). In contrast, the California Court of Appeal in *Donahue* rejected the defendants' claim that their "private auditioning of a film to national advertising agencies" triggered the statute of limitations on the grounds that this use of the plaintiffs' idea did not impair its "[p]ublic marketability." 2 Cal. App. 3d at 802. But in *Blaustein v. Burton*, a case alleging breach of implied contract over a theatrical production of the Shakespeare play *The Taming of the Shrew*, the California Court of Appeal noted that, depending "on the manifested intent of the parties," the statute of limitations might have run as early as "the moment a preliminary script [was] written embodying appellant's idea, even if in fact no motion picture production, based upon such script, ever occurs." 9 Cal. App. 3d 161, 186 (1970).

Here, the Court concludes that Defendants have not met their burden to establish "an impenetrable defense," as they are required to do to prevail on an affirmative defense at the motion to dismiss stage. *Durnford*, 907 F.3d at 604 n.8 (citation omitted). Defendants argue that Plaintiff's cause of action accrued on December 5, 2021, the date of *Don't Look Up*'s New York City premiere. (Mot. at 28). Plaintiff contends that his claim for implied breach of contract accrued no earlier than December 10, 2021, when *Don't Look Up*'s limited theatrical release began, but argues that the work did not become available to the general public within the meaning of California law until it began streaming on Netflix on December 24, 2021. (Pl.'s Opp. at 29). Based on the allegations in the FAC, the Court cannot determine when Defendants "may be held to have used [Plaintiff's] idea." *Blaustein*, 9 Cal. App. 3d at 186. Because, for example, "the date of release of the picture

to the general public" may have been "the use intended by the parties to trigger [Defendants'] obligation to pay," it would be "impermissible to find . . . [Plaintiff's] cause of action . . . barred by the two year statute of limitations" at this stage of the litigation.[7] *Id.*

### C. Whether Plaintiff States a Breach of Implied Contract Claim

"In an idea submission case such as this, to prevail on a cause of action for breach of implied-in-fact contract, plaintiffs must show (1) they clearly conditioned the submission of their ideas on an obligation to pay for any use of their ideas; (2) the defendants, knowing this condition before the plaintiffs disclosed the ideas, voluntarily accepted the submission of the ideas; and (3) the defendants found the ideas valuable and *actually used* them—that is, the defendants based their work substantially on the plaintiffs' ideas, rather than on their own ideas or ideas from other sources." *Spinner v. Am. Broad. Cos., Inc.*, 215 Cal. App. 4th 172, 184 (2013). Here, Defendants move to dismiss on the final element only. "In the absence of direct evidence, 'use' of an idea can be inferred from evidence showing the defendant had access to the plaintiff's idea and the parties' ideas are similar." *Ryder v. Lightstorm Ent., Inc.*, 246 Cal. App. 4th 1064, 1073 (2016). As with Plaintiff's copyright claim, Defendants again seek dismissal on the grounds that Plaintiff has not established substantial similarity between the works, which are the "ideas" at issue in this case. (Mot. at 24).

California courts have characterized copyright claims as "analogous" to implied breach-of-contract claims seeking relief for alleged misappropriation of an idea. *Ryder*, 246 Cal. App. 4th at 1073. Indeed, as in copyright claims, courts evaluating implied

---

[7] The Court accordingly DENIES Plaintiff's Application as premature, without prejudice. Absent further argument and evidence from the parties, the Court cannot determine the date of "the event that triggers the period"—here, the statute of limitations—as required to compute time under Rule 6(a) of the Federal Rules of Civil Procedure. The Court declines, at this time, to engage in an analysis of whether the technical difficulties encountered by Plaintiff's counsel constitute inaccessibility of the clerk's office within the meaning of Rule 6(a)(3).

breach-of-contract claims arising out of an idea submission examine the works' "general theme, tone, characters, relationships, settings, and plots"; the plaintiff bears the burden of showing substantial similarity. *Norman v. Ross*, 101 Cal. App. 5th 617, 665 (2024). *See also Henried v. Four Star Television*, 266 Cal. App. 2d 435, 436 (1968) (evaluating works' "plot, motivation, subject matter, milieu, and characterization"). As the Court has discussed in detail above, Section III.A, Plaintiff has not established substantial similarity between *Stanley's Comet* and *Don't Look Up*. Indeed, although Plaintiff establishes "some overlap in theme," the commonalities identified primarily consist of "very general, high-level elements . . . . of limited use in a substantial similarity analysis." *Norman*, 101 Cal. App. 5th at 661, 664. The Court accordingly DISMISSES this claim.

### D. Whether to Grant Leave to Amend

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects of the pleading. *Knappenberger*, 566 F.3d at 942. In other words, courts should dismiss only those claims that "could not be saved by any amendment." *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003). Although Defendants seek dismissal without leave to amend, (Mot. at 29), they do not explain their request, and the Court is not yet convinced that amendment would be futile. The Court cautions Plaintiff, however, that if he chooses to file another complaint, he must cure the deficiencies in his pleadings identified in this Order. Plaintiff is in possession of his novel and apparently has access to *Don't Look Up*; he should have all the material he needs to correct the defects the Court has identified. If Plaintiff fails to do so, his next complaint will be dismissed with prejudice. *See Nat'l Funding, Inc. v. Com. Credit Counseling Servs.*, 817 Fed. Appx. 380, 385 (upholding dismissal where the amended "complaint failed to cure the deficiencies explicitly identified by the district court in its prior order").

### IV. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Application as premature and GRANTS Defendant's Motion to Dismiss, with leave to amend. Plaintiff may file a Second Amended Complaint, if any, within twenty-one (21) calendar days of the issuance

of this Order.  If Plaintiff does not file an amended complaint within this time, the Court will dismiss the case, without prejudice.

**IT IS SO ORDERED.**

DATED: November 14, 2024

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE